Johnston JEFFRIES, Appellant,

v.

GLACIER STATE TELEPHONE COMPANY, Appellee.

No. 4298.

Supreme Court of Alaska.

Dec. 7, 1979.

James K. Tallman, Anchorage, Johnston Jeffries, Kenai, for appellant.

Louis R. Veerman, Ely, Guess & Rudd, Anchorage, for appellee.

Before CONNOR, BOOCHEVER and MATTHEWS, JJ., DIMOND, Senior Justice, and COOKE, J.

BOOCHEVER, Justice.

When the 1968 volume of the Kenai Peninsula Telephone Directory was published, attorney Johnston Jeffries discovered that his professional telephone number was listed erroneously in the classified section (more commonly known as the "Yellow Pages"). On March 8, 1968, plaintiff Jeffries filed a complaint in superior court seeking damages for the erroneous listing from defendant Glacier State Telephone Company based on allegations of the latter's negligence. On April 8, 1968, Jeffries amended his complaint to contain a second count seeking compensatory and punitive damages for alleged inadequate telephone service. Thus, Count I sought damages for the erroneous listing of Jeffries' telephone number;[1] Count II sought damages for negligent telephone service.

A tangled series of procedural disputes followed,[2] resulting in an order entered by Judge Fitzgerald on December 13, 1971, staying the superior court action and remanding the case to the Public Utilities Commission based on its primary jurisdiction.[3]

Pursuant to the court's order, the Commission conducted a hearing on June 9, 1972, receiving evidence from Jeffries, other telephone customers, and representatives of Glacier State. The Commission found that although the level of local telephone service during the period in question[4] was "below a desirable standard of service," it was nevertheless a "reasonable level of tele-

1. On December 5, 1977, the parties entered into a settlement agreement which disposed of Count I of the complaint. Under the terms of the agreement, the parties agreed that Jeffries would receive judgment on Count I pursuant to his unopposed motion for partial summary judgment and that his damages would be fixed at the amount of $500.00. On January 6, 1978, the superior court, by Judge Rowland, entered partial summary judgment in favor of Jeffries.

2. Initially, the superior court dismissed Count II of Jeffries' complaint, directing him to submit a complaint before the Public Service Commission (hereinafter referred to as the "Commission"). In 1970, AS 42.05.010 was amended changing the name of the Public Service Commission to the Public Utilities Commission. The superior court was referring to the Commission by its earlier name. On July 12, 1968, the Commission "dismissed" Jeffries' complaint upon the grounds that he had failed to exhaust his administrative remedies. Jeffries thereupon filed a "Supplemental and Amended Complaint" in September in the superior court which essentially paralleled his earlier filed two-count amended complaint. The supplemental complaint, in addition, detailed specific instances of alleged inadequate telephone service and recited Jeffries' unsuccessful efforts to obtain satisfaction from Glacier State and the Commission. On November 14, 1968, the superior court issued a mandatory order directing the Public Service Commission "to hear, act upon and finally dispose of the complaint filed by plaintiff." The court vacated this order on December 5, 1968, apparently for the reason that the Public Service Commission wished to intervene in the proceedings. On February 5, 1969, the superior court granted the Commission's motion to intervene. The superior court, per a memorandum of decision dated October 28, 1969, requested further briefing on the issue of primary jurisdiction.

3. Jeffries requested a clarification of the court's ruling, and Judge Fitzgerald responded by letter on January 18, 1972. In part, the letter stated:

> The cases, which I relied upon in my ruling, indicated that primary jurisdiction of claims such as advanced by the plaintiff should be first dealt with by the administrative agency having jurisdiction. The cases also suggested procedures for implementing a suitable remedy for the plaintiff if the claim was established. Hence, I have remanded the matter to the Commission for further proceedings. If the proceedings terminate in plaintiff's favor, then if it should be necessary, the implementation of plaintiff's remedy may be sought in Superior Court.

4. The Commission limited its examination to the period of time between April 3, 1967, and September 12, 1968.

phone service under the conditions existing at the time." The Commission further found that Glacier State had not discriminated against Jeffries in the matter of service. Based upon these findings, the Commission entered an order dismissing Jeffries' complaint on December 30, 1972. Jeffries did not appeal or otherwise seek judicial review of this order.[5]

On November 2, 1973, Jeffries moved for an order directing the cause to continue in superior court. On January 16, 1974, the superior court, per Judge Burke, entered an order allowing Jeffries to proceed with his action for damages.

Glacier State moved for judgment on the pleadings[6] as to Count II based on the doctrine of "administrative res judicata." In a memorandum decision dated August 25, 1977, Judge Rowland concluded that Jeffries was precluded from litigating Count II of the complaint by the doctrine of res judicata.[7] Accordingly, the court entered judgment dismissing Count II of Jeffries' supplemental and amended complaint.

Glacier State moved for an award of attorney's fees pursuant to Civil Rule 82. On May 31, 1978, the superior court awarded Glacier State attorney's fees in the amount of $1,000.00.

▮ Jeffries appeals the court's judgment dismissing Count II of the complaint and the order awarding Glacier State $1,000.00 in attorney's fees. In his brief, Jeffries develops two broad assignments of error.[8] He contends:

(1) that the superior court erred in giving res judicata effect to the Commission's findings regarding the issue of Glacier State's liability for inadequate telephone service.

(2) that the superior court erred in awarding defendant attorney's fees because (a) it is not possible to determine which party prevailed in the litigation, or (b) the public interest exception applies.

Based on the unique procedural circumstances involved in this case, we believe that Jeffries is entitled to have the superior court review the Commission's findings in the context of an administrative appeal. We do not reach Jeffries' subsidiary argument concerning his right to jury trial since we find that the issue was not properly raised before the superior court. Finally, we believe it would be premature to rule on the merits of the award of attorney's fees to Glacier State since further proceedings with respect to Count II will be necessary.

## I.  ADMINISTRATIVE RES JUDICATA

▮ Relying on the doctrine of primary jurisdiction,[9] the superior court "remanded"

---

5.  AS 42.05.551(a), which is applicable to the Alaska Public Utilities Commission, provides:
    All final orders of the commission are subject to judicial review in accordance with AS 44.-62.560–44.62.570 of the Administrative Procedure Act.

6.  The superior court treated the motion as one for summary judgment because it was requested to consider matters outside the pleadings.

7.  Judge Rowland based his decision on the Commission's unappealed finding that Glacier State had provided a reasonable level of telephone service under the circumstances.

8.  In his statement of points on appeal, Jeffries specified four instances of error in the superior court proceedings. We will treat as abandoned those points specified in the points on appeal but not discussed in appellant's brief. *Nordin Constr. Co. v. Whitney Bros. Plumbing & Heating, Inc.*, 441 P.2d 122, 123 (Alaska 1968).

9.  We have previously explained the rationale behind the doctrine of primary jurisdiction in *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1032–33 (Alaska 1972) (footnotes omitted):
    Under the so-called "doctrine of primary jurisdiction", a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise. In order for such a judicial reference to be valid, at least some part of the case must fall within the exclusive jurisdiction of the administrative agency. The jurisdiction of the agency, in turn, depends upon the administrative authority conferred upon it by the relevant statutes.
    Professor Davis explains that agency expertise is not the principal reason for invoking the doctrine of primary jurisdiction:
    Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agency's spe-

the case to the Commission and "stayed" the superior court proceedings. This decision is not attacked directly in this appeal. Pursuant to the court's order and after conducting hearings, the Commission concluded that although Glacier State's service was below a "desirable standard," it was nevertheless reasonable and non-discriminatory as applied to Jeffries. Jeffries did not timely appeal the findings of the Commission.[10] Finding that both parties had an opportunity to be heard before the Commission and that the Commission acted in an adjudicatory capacity when it considered Jeffries' second claim for relief, Judge Rowland ruled that Jeffries was precluded from attacking the Commission's unappealed findings that Glacier State had provided a reasonable level of service. Accordingly, the superior court dismissed Count II of Jeffries' complaint on the basis of res judicata.[11]

Jeffries argues that the Commission's findings should not be accorded res judicata effect because the Commission is without jurisdiction to adjudicate tort liability for negligence in providing telephone service. Jeffries also contends that to give res judicata effect to the Commission's findings would deprive him of his constitutional right to a jury trial. Glacier State argues that the Commission's findings should be given res judicata effect because the Commission was acting in an adjudicatory capacity pursuant to a statutorily authorized grant of jurisdiction.

■ Although the principles of issue preclusion have been developed in a judicial setting,[12] we agree with the modern and now generally accepted view that the doctrine of res judicata may be applied to adjudicative determinations made by administrative agencies.[13] Although authorities caution against rigid application of the rules developed in the judicial setting, they agree that in many cases the reasons for finality of determinations apply with as much force in the administrative arena as they do in the judicial forum.[14] Thus, Professor Davis concludes:

cialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements. *See* 3 K. Davis, Administration Law Treatise § 19.01, at 5 (1958).

10. Final orders of the Commission are judicially reviewable in accordance with AS 44.62.-560–.570 of the Administrative Procedure Act. *See* AS 42.05.551(a), set forth in note 5 *supra*. Section 560(a) of the Administrative Procedure Act specifies, in part, that an appeal from an agency determination must be filed within thirty days after the last day on which reconsideration can be ordered. *See* note 17 *infra*. The power to order reconsideration expires thirty days after the delivery or mailing of the decision to the respondent. *See* AS 44.62.540(a).

11. The superior court and the parties use the term res judicata in a broad sense to include the doctrines of merger, bar, collateral estoppel, and direct estoppel. This is the usage adopted by the Restatement of Judgments. *See* Restatement of Judgments, Introductory Note to § 41–77, at 160 (1942). Although we do not dispose of this case on res judicata grounds, we note that it involves the principle of "direct estoppel," an uncommon creature in the field of former adjudication. The doctrine of "estoppel" relates to the effect of a prior judgment as conclusively determining disputed issues which arise again in a second proceeding. When the subsequent action is based upon a different cause of action, "collateral estoppel" bars the relitigation of issues actually determined in the first proceedings. When the subsequent action is based upon the *same* claim or cause of action, "direct estoppel" precludes relitigation of issues actually determined in the first proceedings. *See* 2 K. Davis, Administrative Law Treatise § 18.01 n.5, at 547 (1958). The issue determined by the Commission in the administrative proceeding relates to the same claim Jeffries advances in his complaint in superior court: damages for negligent telephone service.

12. For example, in *Scott v. Robertson*, 583 P.2d 188 (Alaska 1978), we stated:
> [H]oldings *of a court* in prior civil litigation are regarded as conclusive under the doctrine of collateral estoppel.

*Id.* at 193 (footnote omitted and emphasis added).

13. *See* 2 F. Cooper, State Administrative Law 503 (1965); 2 K. Davis, Administrative Law Treatise § 18.02, at 548 (1958).

14. *See, e. g., Hazel v. Alaska Plywood Corp.*, 16 Alaska 642, 648 (Alaska 1957); 2 K. Davis, Administrative Law Treatise § 18.02, at 548 (1958).

That the doctrine of res judicata should be applied in full force to some administrative action seems clear beyond question. The doctrine is at its best as it applies to an adjudication of past facts, where the second proceeding involves the same claim or the same transaction.

2 K. Davis, Administrative Law Treatise § 18.03, at 559 (1958). Each case, of course, must be examined on its facts to determine whether application of res judicata is warranted.[15] Moreover, the judicial doctrine itself is filled with requirements and qualifications, and each must be satisfied before a court may hold that a party is bound by a prior determination.

█ We need not reach the issue of whether this is a proper case for applying the doctrine of res judicata, for we believe that Jeffries is entitled to a judicial review of the Commission's finding. This case went to the Public Utilities Commission in a unique procedural posture. In 1971, Judge Fitzgerald "remanded" the case to the Commission pursuant to the doctrine of primary jurisdiction and "stayed" the superior court proceeding pending the Commission determination. It appears that the superior court retained jurisdiction over Jeffries' action, for the court did not dismiss Jeffries' complaint. Jeffries moved for an order directing the cause to continue in superior court on November 2, 1973.[16] Although Jeffries' motion to continue the cause was not filed within thirty days of the Commission's determination,[17] we hold that the superior court had continuing jurisdiction over the action and that the time limitation specified for appeals from agency determinations did not begin to run against Jeffries. Jeffries' motion to continue the cause in superior court should be treated as an administrative appeal for purposes of judicial review of the Commission's finding.[18] In the future, such appeals should be timely filed in accordance with the provisions of the Administrative Procedure Act.

**15.** For instance, in this case, were we to reach the issue of administrative res judicata, we would be confronted with the question of whether the doctrine should be applied to agency determinations rendered pursuant to an exercise of primary jurisdiction.

**16.** Then Judge Burke of the superior court entered an order allowing Jeffries to proceed with his action for damages on January 16, 1974.

**17.** AS 42.05.551(a), set forth in note 5 *supra*, provides that final orders of the Commission may be judicially reviewed in accordance with AS 44.62.560–.570 of the Administrative Procedure Act. AS 44.62.560(a) provides:
   *Judicial review.* (a) Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of court governing appeals in civil matters. Except as otherwise provided in this section, *the notice of appeal shall be filed within 30 days after the last day on which reconsideration can be ordered,* and served on each party to the proceeding. The right to appeal is not affected by the failure to seek reconsideration before the agency. [emphasis added]

**18.** AS 44.62.570 delineates the scope of review to be exercised by the superior court.
   (a) An appeal shall be heard by the superior court sitting without a jury.
   (b) Inquiry in an appeal extends to the following questions: (1) whether the agency has proceeded without, or in excess of jurisdiction; (2) whether there was a fair hearing; and (3) whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.
   (c) The court may exercise its independent judgment on the evidence. If it is claimed that the findings are not supported by the evidence, abuse of discretion is established if the court determines that the findings are not supported by (1) the weight of the evidence, or (2) substantial evidence in the light of the whole record.
   (d) The court may augment the agency record in whole or in part, or hold a hearing de novo. If the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing, the court may (1) enter judgment as provided in (e) of this section and remand the case to be reconsidered in the light of that evidence; or (2) admit the evidence at the appellate hearing without remanding the case.
   (e) The court shall enter judgment setting aside, modifying, remanding, or affirming the order or decision, without limiting or controlling in any way the discretion legally vested in the agency.

We refuse, however, to impose upon Jeffries the time limitations governing appeal from agency decisions, for he could have reasonably believed the superior court's retention of jurisdiction allowed him to continue his action there at any time.

We shall now discuss the issues that remain to be decided by the superior court. Jeffries' complaint contained two counts: Count I sought damages for a specific instance of negligence which affected only Jeffries, while Count II sought damages for generally inadequate phone service which affected the public in general, including Jeffries.

## II.   TELEPHONE SERVICE

■    When a disgruntled phone subscriber seeks to recover damages for inadequate telephone service which is common to the public, we believe that the complaint may properly be referred to the Public Utilities Commission for exercise of primary jurisdiction.[19] Pursuant to its authority to prescribe "just and reasonable standards . . . and practices" to be observed in furnishing services and facilities,[20] and its authority to hear complaints,[21] the Commission may determine ("find") whether the public utility's service or facilities meet the Commission's standards of reasonableness and adequacy. Such findings, of course, may be appealed to the superior court for review in accordance with the Administrative Procedure Act, but the initial determination should be made by the Commission.[22] When, however, a phone customer alleges that he has suffered from acts or omissions of the utility which result in inadequate service which is different from that provided to the public as a whole, the complaint should be handled as a traditional common law action, and the superior court should determine the issues in accordance with settled principles of tort liability. In this case, Jeffries' only allegation of a particular invasion of his individual interests was contained in Count I, which has been settled by the parties. As we read

19. *See, e. g., Valentine v. Michigan Bell Tel. Co.,* 31 Mich.App. 18, 187 N.W.2d 249, 250 (1971), *aff'd,* 388 Mich. 19, 199 N.W.2d 182 (1972); *Grevers v. Michigan Bell Tel. Co.,* 18 Mich.App. 422, 171 N.W.2d 476, 477 (1969); *Warren v. New York Telephone Co.,* 70 Misc.2d 794, 335 N.Y.S.2d 25, 29 (1972); *Meyerson v. New York Telephone Co.,* 65 Misc.2d 693, 318 N.Y.S.2d 900, 902–03 (1971).

20. AS 42.05.291(c) provides in full:

The commission may, upon its own motion or upon complaint after providing reasonable notice and opportunity for hearing, prescribe as to service and facilities, including the crossing of facilities, just and reasonable standards, classifications, regulations, and practices to be furnished, imposed, observed, and followed by public utilities; prescribe adequate and reasonable standards for the measurement of quantity, quality, pressure, initial voltage, or other conditions pertaining to the supply of the service of public utilities; prescribe reasonable regulations for the examinations and testing of the service, and for the measurement of it; prescribe or approve reasonable regulations, specifications, and standards to secure the accuracy of meters and appliances for measurement; and provide for the examination and testing of appliances used for the measurement of a service of a public utility. In doing so, the commission shall conform to the standard practices of the industry.

21. AS 42.05.291(d) provides in full:

If the commission, upon its own motion or upon complaint, after providing reasonable notice and opportunity for hearing, finds that the service or facilities of a public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this chapter, the commission shall prescribe, by regulation or order, the reasonable, safe, adequate, sufficient service or facilities to be observed, furnished, enforced, or employed, including all repairs, changes, alterations, extensions, substitutions, or improvements in facilities that are reasonably necessary and proper for the safety, accommodation, and convenience of the public.

22. Professor Davis makes this principle clear:

The doctrine of primary jurisdiction does not necessarily allocate power between courts and agencies, for it governs only the question whether court or agency will *initially* decide a particular issue, not the question whether court or agency will *finally* decide the issue. Even if the agency is held to have primary jurisdiction with respect to an issue, a court may still set aside or modify what the agency has done, in accordance with the law governing the scope of review.

3 K. Davis, Administrative Law Treatise § 19.-01, at 3 (1958) (footnote omitted, emphasis in original).

Jeffries' complaint, all allegations of Glacier State's negligent or willful conduct contained in Count II would have affected the public as a whole.[23] Thus, the task remaining before the superior court is that of reviewing the Commission's findings and conclusions in accordance with the procedures specified in AS 44.62.570.[24]

## III. RIGHT TO JURY TRIAL

In a subsidiary argument, Jeffries asserts that allowing the Commission to determine whether Glacier State is liable to him for damages would deprive him of his constitutional right to trial by jury.[25] Jeffries contends that his suit was a common law action because his complaint sought damages.

Although Jeffries requested a jury trial, the issue regarding his constitutional right to a jury trial was not properly raised or briefed at the superior court level.[26] Moreover, he failed to include this issue in his statement of points on appeal. Given this state of the record, the issue is not properly before this court.[27]

## IV. ATTORNEY'S FEES

Glacier State, at the conclusion of the litigation, moved for an award of attorney's fees. Glacier State claimed actual attorney's fees and related costs of $9,871.70. Of this sum, Glacier State claimed that $7,835.19 was attributable to the defense of Count II. The superior court awarded Glacier State $1,000.00 in attorney's fees.

Jeffries argues that the award of attorney's fees to Glacier State was improper on two grounds. First, he asserts that there was no "prevailing party" in the litigation. Second, he argues that an award of attorney's fees was improper because the litigation involved a question of genuine public interest which was brought in good faith. Glacier State disputes both of these assertions.

We find it unnecessary to determine whether the award of attorney's fees was proper. Given our disposition of the case, further proceedings with respect to Count II will be necessary in the superior court. Accordingly, any ruling on attorney's fees would be premature at this time.

23. There are a couple of possible exceptions to this characterization. Jeffries alleges that due to inordinate delay in connecting the telephone in his office and his secretary's office, his practice was disrupted. He also alleges that Glacier State has failed to move the location of the telephone in his residence despite numerous requests. These alleged instances of inadequate telephone service may or may not be common to the public. On remand, the superior court should determine whether these instances of service failure were of a type suffered by the public as a whole.

Jeffries alleges that Glacier State's failure to make available service from Soldotna to Kenai, which is required by its tariff, has forced him to use the long distance service on many occasions, at an additional cost of at least $1,000.00. Again, the superior court should determine whether this type of alleged inadequate service was of a type common to the public or was in the nature of a special injury suffered by Jeffries.

Jeffries finally alleges that since the repair service number is frequently busy or not answered, "it is necessary to make a trip to . . . the office headquarters of the Defendant [in Kenai] in order to report the need of repair service." Jeffries does not allege, however, that he has ever made such a trip.

24. *See* note 18 *supra.*

25. The seventh amendment to the United States Constitution provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

Article I, section 16, of the Alaska Constitution provides, in part:

> In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law.

26. The only reference to the plaintiff's right to jury trial appears in his memorandum in opposition to motion for judgment on the pleadings. He briefly states:

> Plaintiff . . . in addition would like to point out to the Court that there was no possible way for plaintiff to have his jury trial in the administrative proceedings before the Commission.

27. *See* Alaska R.App.P. 9(e).

The judgment on Count II of Jeffries' complaint is REVERSED, and the cause is REMANDED to the superior court for proceedings not inconsistent with this opinion.

RABINOWITZ, C. J., and BURKE, J., not participating.