Karen HOLMBERG, Appellant,

v.

STATE of Alaska, DIVISION OF RISK MANAGEMENT, and Alaska Workers' Compensation Board, Appellees.

No. S–3230.

Supreme Court of Alaska.

Aug. 3, 1990.

Philip M. Pallenberg, Findley & Pallenberg, Juneau, for appellant.

BethAnn Boudah Chapman and James R. Webb, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee State of Alaska, Div. of Risk Management.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

Karen Holmberg asks us to reverse the Alaska Workers' Compensation Board ("AWCB") decision denying her permanent total disability benefits on the ground that

a later decision of the Public Employees Retirement Board ("PERB") conclusively determined that she was not physically able to perform her duties as an employee of the State of Alaska. While we find no substantial reason to refuse to give preclusive effect to PERB determinations in AWCB proceedings in general, we refuse to give such effect to the PERB determination in this case for two independently sufficient reasons. First, the state is not bound by the PERB decision because the state is not in privity with the real party in interest in the PERB proceeding, the Public Employees Retirement System ("PERS"). Second, the later PERB decision cannot preclude any issues raised in the earlier AWCB decision because the PERB decision was not the first final judgment. The AWCB judgment was final for res judicata [1] purposes even while this appeal was pending. Since the AWCB determination that Holmberg was physically able to perform her job requirements is supported by substantial evidence, we affirm.

## I.

Karen Holmberg began working for the State of Alaska, Division of Risk Management ("Risk Management") in 1979. She has a history of back injuries dating to the early 1960s. She underwent back surgery twice in the 1960s, but denies experiencing any back pain from about 1970 until approximately 1981. Concurrent with her employment with Risk Management, which involved long periods of sitting, her back condition worsened and she had surgery several more times. Holmberg's back condition may have been exacerbated by falls both on and off the job on account of back pain and by several work-related knee injuries.

Holmberg had considerable control over her work activities as Risk Management Officer II. Her work station was equipped with a standing desk and a reclining chair. A secretary also was available to assist her with bending and lifting. Nonetheless, Holmberg resigned her job on account of back pain on June 30, 1987.

Holmberg filed a claim for disability benefits with AWCB. On February 18, 1988, AWCB awarded Holmberg temporary total disability benefits, but denied her claim for permanent total disability benefits. Holmberg appealed AWCB's denial of permanent total disability benefits to the superior court in March 1988.

Holmberg also sought disability benefits from PERS. The Division of Retirement and Benefits ("Retirement and Benefits"), which administers PERS, awarded her nonoccupational disability benefits. However, the Disability Review Board denied her claim for occupational disability benefits. Holmberg appealed this initial decision to PERB. On April 20, 1988, after AWCB had denied her claim for permanent total disability benefits, PERB found that Holmberg was permanently and totally disabled as a result of accidents at work, and accordingly, awarded her occupational disability benefits.

Holmberg supplemented the record in her appeal from the prior AWCB decision with the new PERB decision. In the proceedings before the superior court, Holmberg argued that the AWCB decision should be reversed because of the preclusive effect of the later PERB decision. The superior court affirmed the AWCB decision and Holmberg appealed.

## II.

Holmberg's primary contention is that PERB's factual determination that she was physically unable to perform her duties at Risk Management should be given binding effect in this appeal of the AWCB decision against her.[2] The state counters not only

1. We use the term "res judicata" to refer to both claim preclusion and issue preclusion. We use the term "collateral estoppel" to refer specifically to issue preclusion.

2. In her opening brief, Holmberg appears to argue that the PERB decision that she was permanently and totally disabled should preclude AWCB's contrary decision. In her reply brief, Holmberg recognizes that the question whether she was disabled for purposes of PERS is not the same question as whether she was disabled for purposes of the Alaska Workers' Compensation Act. In her reply brief, Holmberg limits

that Holmberg fails to meet any of the conditions for applying collateral estoppel, but also that the doctrine does not even apply between two independent administrative tribunals.

Although res judicata principles were developed in judicial settings, they "may be applied to adjudicative determinations made by administrative agencies." *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 (Alaska 1979); *accord United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). At the same time, "[e]ach case, of course, must be examined on its facts to determine whether application of res judicata is warranted." *Jeffries*, 604 P.2d at 9. We noted in *Jeffries* that if we were to decide the question, we would be confronted with the issue whether to apply res judicata to agency determinations rendered pursuant to an exercise of primary jurisdiction. 604 P.2d at 9 n. 15. Such a deferential scheme suggests that the agency's decisions should be given preclusive effect. If, on the other hand, a statutory scheme contemplates that administrative decisions are not meant to preclude independent judicial action, application of res judicata principles may be unwarranted. *See* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4475, at 765 (1981). Of course, "[a]n administrative decision commands preclusive effects only if it resulted from a procedure that seems an adequate substitute for judicial procedure." *Id.* at 764–65.

Recently, we held that AWCB decisions may have preclusive effect. *McKean v. Municipality of Anchorage*, 783 P.2d 1169 (Alaska 1989). We see no reason why PERB decisions should not also be given preclusive effect. First, like AWCB proceedings, PERB hearings include many of the procedural safeguards of a judicial hearing including the right to introduce evidence, call witnesses, and cross-examine opposing witnesses. *Compare* 2 AAC 35.-

160 (PERB) *with* 8 AAC 45.120 (AWCB). Second, there is no indication in the PERS enabling statute, AS 39.35, that a PERB determination should not preclude an independent judicial determination.

■ The state does not contend that PERB decisions should not be given preclusive effect. Rather, the state argues that preclusive effect should not be given to PERB determinations in AWCB proceedings. We have not addressed the question how res judicata principles apply between different agencies. The Supreme Court has held that litigation conducted before one agency or official is generally binding on another agency or official of the same government because officers of the same government are in privity with each other. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 916–17, 84 L.Ed. 1263 (1940). The Court stated that "[t]he crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." 310 U.S. at 403, 60 S.Ct. at 917. Applying this principle, the Court held that since the National Bituminous Coal Commission clearly had the authority to determine the status of coal under federal law for taxation purposes, the Commission of Internal Revenue was precluded from relitigating the issue of the coal's status.

The United States Court of Appeals has applied this authority principle in appropriate cases. In *Safir v. Gibson*, 432 F.2d 137 (2d Cir.), *cert. denied*, 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970), the court relied on the authority principle in holding that the Federal Maritime Commission's determination that the rates of a conference of common carriers were unfair and unjustly discriminatory precluded the independent Maritime Administration from relitigating the issue. The court explained:

her collateral estoppel claim to the narrower factual question whether she was physically able to work at Risk Management. However, she maintains that the resolution of this factual issue in her favor is tantamount to a finding

that she was permanently and totally disabled for purposes of workers' compensation because the state conceded as much in the AWCB proceeding.

It is the FMC, not the Maritime Administration, that has the expertise to pass on whether rates are unfair or unduly discriminatory, and it would be quite unseemly for the Maritime Administration to conclude that its sister agency had been wrong on a fully litigated issue the decision of which Congress had confided to it.

432 F.2d at 143 (citations omitted). In *Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294 (7th Cir.1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980), the court refused to give preclusive effect to a Postal Service factual determination concerning the safety of a diet pill in a Federal Trade Commission proceeding. The court found that there was "a clear and convincing need for a new determination of the issue ... because of the potential impact of the determination on the public interest or the interests of persons not themselves parties to the initial action." 605 F.2d at 300.

The court's holding in *Porter & Dietsch* illustrates the principle that preclusion may be defeated by finding such an important difference in the functions of different agencies that one does not have authority to represent the interests of the other. *See Sunshine*, 310 U.S. at 403, 60 S.Ct. at 917; *see also* C. Wright, A. Miller, & E. Cooper, *supra* p. 6, § 4458, at 507 & n. 11. This exception to the application of collateral estoppel is cast in terms of legislative policy in § 83 of the *Restatement (Second) of Judgments:*

> (4) An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that
>
> . . . .

(b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

In this case, it does not appear that PERB has any more expertise than AWCB in making factual determinations of a person's physical ability to work at a particular job. Therefore, there is no affirmative reason why the PERB decision should be given preclusive effect as FMC's decision was in *Safir*. The state makes several arguments why granting PERB determinations preclusive effect in AWCB proceedings would be inconsistent with the Alaska Workers Compensation Act ("AWCA"). The strength of its arguments, however, stems mainly from the false premise that Holmberg seeks to preclude AWCB's ultimate disability determination instead of its factual determination that Holmberg was physically able to perform her job duties.[3]

The state argues that the different functions of the workers compensation system and PERS prevent the application of collateral estoppel. The state correctly notes the differences between the two systems: "While workers' compensation assures that a worker's ability to earn a certain wage is protected, PERS is designed to promote continued public employment." These different purposes are manifest in their different standards of disability. A "disability" for purposes of AWCA "means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.265(10). A determination of disability, therefore, requires considering "not only the extent of the injury, but also age, education, employment available in the area for persons with the capabilities in question, and intentions as to employment in the future." *Vetter v. Alaska Workmen's Compensation Bd.*, 524 P.2d 264, 266 (Alaska 1974). An "occu-

---

**3.** For example, the state's argument that collateral estoppel is not properly invoked between two independent tribunals which have statutory discretion to fashion separate remedies confuses issue preclusion with claim preclusion. Of course, a PERB decision that a worker is entitled to PERS benefits does not bar an AWCB decision that she is not entitled to AWCA benefits because they are independent remedies. *See* Restatement (Second) of Judgments § 83(3). However, AWCB's authority to fashion a separate remedy is no argument against precluding the relitigation of identical factual issues decided in an earlier PERB proceeding. *See* Restatement (Second) of Judgments § 83(4).

pational disability" for purposes of PERS, on the other hand, "means a physical or mental condition that ... prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified...." AS 39.35.680(26). Unlike AWCA, no consideration of alternative employment with a different employer is required.

While the state is correct that these different standards of disability prevent PERB determinations of disability from having preclusive effect in AWCB proceedings, they provide no substantial reason why AWCB should be allowed to relitigate the narrow factual question whether Holmberg is physically able to continue performing her job with Risk Management. Although the value of collateral estoppel may be low in light of the broad economic focus of the disability inquiry under AWCA, that is not a substantial reason to allow relitigation.[4]

### III.

Having found no substantial reason not to give PERB determinations preclusive effect in AWCB proceedings in general, we next consider whether the necessary elements of collateral estoppel exist in this case. There are three necessary conditions to the application of collateral estoppel:

1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

3. The issue in the first action must have been resolved by a final judgment on the merits.

*Murray v. Feight,* 741 P.2d 1148, 1153 (Alaska 1987). We believe that PERB's decision that Holmberg was physically unable to perform her duties should not be given binding effect in this appeal of the AWCB decision for two independently sufficient reasons. First, the state cannot be bound by the PERB decision because it is not in privity with PERS. Second, although the PERB decision was a final judgment, the AWCB decision was the first final judgment deciding this ·question. AWCB's decision did not lose any of its preclusive effect when Holmberg appealed the decision.

### A.

The privity requirement does not have a general definition; rather "it is a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected." *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.,* 768 P.2d 117, 121 (Alaska 1989). Privity exists between different agencies of the same government unless "there are important differences in the authority of the respective agencies." *Briggs v. State,* 732 P.2d 1078, 1082 (Alaska 1987). This is the same test that determines whether the decision of one agency binds another agen-

---

**4.** The state raises one argument that does apply to the factual issue in question. The state argues that granting preclusive effect to PERB determinations in AWCB proceedings would be inconsistent with AS 23.30.122 which provides that "[t]he board has the sole power to determine the credibility of a witness." However, as Holmberg points out, this statute was intended only to make sure that AWCB judgments of credibility are afforded the same deference given to a jury's judgments of credibility. *See* Larson & Lewis, *The Alaska Workers' Compensation Law: Fact–Finding, Appellate Review, and the Presumption of Compensability,* 2 Alaska L.Rev. 1, 19 (1985). It does not indicate a legislative policy that AWCB should be allowed

to relitigate identical issues decided in other administrative proceedings.

We also note that the legislature has declared that it is its intent that "the board possess the greatest possible authority in the exercise of its fact finding responsibilities and that the board's decisions be conclusive unless the court finds that a reasonable person could not have reached the conclusion made by the board." Ch. 79, § 1, SLA 1988. This language indicates the legislature's intent that AWCB factual determinations be given great deference on appeal. It does not evidence a legislative judgment that AWCB should be allowed to relitigate factual determinations of another tribunal including PERB.

cy. In the privity context, however, the question is not whether the forum agencies are in privity, but whether the agencies appearing before them are. In *Briggs*, we held that the Department of Public Safety was collaterally estopped from relitigating whether the state took reasonable steps to preserve a breath sample in a license revocation proceeding where the issue was resolved in the motorist's favor in an earlier criminal proceeding. 732 P.2d at 1082–83. We found that there was privity since the Department of Public Safety's interests in litigating the issue were adequately represented by the District Attorney at the suppression hearing. *Id.*

Holmberg observes that the Division of Retirement and Benefits contested her claim before PERB. Holmberg then argues that Retirement and Benefits is in privity with Risk Management because "the interests of the two agencies are virtually identical for purposes of [her] claims, and Retirement and Benefits had every incentive to vigorously defend the PERS claim."

Holmberg's error is in identifying Retirement and Benefits as the party against which PERB entered judgment. Retirement and Benefits is charged with administrative responsibility for PERS.[5] The significance of this is that when Retirement and Benefits appears before PERB,[6] it represents the interests of PERS, not the interests of the state. Thus, while Retirement and Benefits contested Holmberg's claim before PERB, the state is correct in saying that the party against which PERB entered judgment is the system itself.

In *Traub v. Board of Retirement*, 34 Cal.3d 793, 195 Cal.Rptr. 681, 670 P.2d 335 (1983), the California Supreme Court held that a county retirement board was not bound by a workers' compensation decision in a benefits hearing against the county for lack of privity. 195 Cal.Rptr. at 684, 670

P.2d at 338. The court observed that the constituency of the county retirement system "is not limited to county employees, but may include employees of various political subdivisions and districts within the county." *Id.* The court reasoned that the system is not in privity with the county because "any adjudication of a claim for benefits may have economic impact upon the membership of the association as well as upon the treasury of the county and participating political entities." *Id.*

PERS is structured in a similar fashion. PERS is not a state agency but an independent retirement plan in which public employees are members and in which their employers participate. *See* AS 39.35.120; AS 39.35.550. PERS is funded by contributions from all its employer participants as well as their employees. AS 39.35.160, AS 39.35.250. While an employer's contribution rate depends in part on its compensation experience, Holmberg is wrong in saying that "any award under PERS will ultimately be paid by State funds." To the contrary, PERS awards are made from the trust fund to which all PERS members and PERS participants contribute. While a state agency administers PERS and represents it during appeals, the state as employer is just one participant. The state treasury is affected by a benefit determination only insofar as the state is an employer participant. Just as the county retirement system in *Traub* is not in privity with the county, PERS is not in privity with the state.

The preclusion issue in this case is the converse of *Traub*. The question is not whether PERS is bound by an AWCB decision against one of its members, but whether one of its members is bound by a decision against PERS. The questions are not symmetrical. The PERS constituency is not represented at all in a workers' com-

---

**5.** The PERS enabling statute provides that "[t]he commissioner of administration is responsible for the administration of the system...." AS 39.35.020. The statute then directs the Commissioner to "appoint an administrator in charge of the public employees' retirement system...." AS 39.35.050. PERB's regulations promulgated

under the statute indicate that the commissioner has delegated administrative responsibility for PERS to the Division of Retirement and Benefits of the Department of Administration. *See* 2 AAC 35.080, 35.275, 35.300.

**6.** *See* 2 AAC 35.160.

pensation proceeding. The employer-participant, however, is at least nominally represented in the PERS proceeding to the extent that it has an interest in the PERS fund. At the same time, this nominal representation is not sufficient to assure that the participant has had adequate notice and opportunity to be heard and that its rights and interests have been protected. We therefore hold that the state as a participant in PERS is not in privity with PERS.

## B.

■ Our holding that the state is not in privity with PERS is sufficient to deny affording any preclusive effect to the PERB decision as against the state. However, even if the state and PERS were in privity, the PERB decision would not preclude any issues raised in the earlier AWCB proceeding because the PERB decision was not the first final judgment addressing those issues. Holmberg observes that "[t]his case presents the collateral estoppel issue in a somewhat unusual procedural context." AWCB reached its decision first. While that decision was on appeal, PERB entered a contrary decision which was not appealed. Holmberg argues that the PERB decision was the first final judgment for the res judicata purposes and therefore precludes AWCB's contrary decision because the AWCB decision was appealed.

We disagree. A final judgment retains all of its res judicata effects pending resolution of an appeal of the judgment. *Rapoport v. Tesoro Alaska Petroleum*, 794 P.2d 949, 952, (Alaska 1990). This rule respects the principle of repose inherent in the doctrine of res judicata. If a judgment was denied its res judicata effects merely because an appeal was pending, a litigant could refile an identical case in another trial court creating duplicative litigation. This case well illustrates the point. Having lost on the issue whether she was physically able to perform her job duties in the AWCB proceeding, Holmberg appealed the decision and then successfully relitigated the issue before PERB. Retirement and

Benefits did not argue that PERB was precluded from relitigating the issue that AWCB already had decided. Now Holmberg asks us to reverse the earlier AWCB determination simply because of the later PERB determination. In *Flood v. Harrington*, 532 F.2d 1248 (9th Cir.1976), the court summarily rejected a similar tactic: "the later order can scarcely constitute a bar to the instant action, decided below on an earlier date." 532 F.2d at 1250. We agree. To reward relitigation of an issue by reversing the original determination is completely at odds with the purpose of collateral estoppel to prevent relitigation of issues that already have been decided.

The difficulty with the rule that a judgment retains its preclusive effects even if it is appealed is that a second judgment based on the preclusive effects of the first one should not stand if that judgment is reversed. A court may avoid this difficulty by staying its proceedings pending the appeal of the first judgment. *E.g., Bailey v. Ness*, 733 F.2d 279 (3d Cir.1984); *Seltzer v. Ashcroft*, 675 F.2d 184 (8th Cir.) (per curiam), *cert. denied*, 464 U.S. 860, 104 S.Ct. 185, 78 L.Ed.2d 164 (1982). Staying proceedings is more desirable than dismissing the case without prejudice since it avoids the risk of a statute of limitations bar to a new action should the earlier judgment be reversed on appeal. *Bailey*, 733 F.2d at 283; *Seltzer*, 675 F.2d at 185. Staying or dismissing the second action is most attractive when there is a reasonable prospect that the resolution of the appeal in the first action will preclude the second action entirely. *See* 18 C. Wright, A. Miller, & E. Cooper, *supra* p. 6, § 4433, at 313. However, when the second action presents claims or issues that must be tried regardless of the outcome of the first action, the better course may be to give preclusive effect to the issue or claim that already has been decided. *Id.* If the prior decision is reversed on appeal, a party always may institute a direct action under Civil Rule 60(b)(5) to vacate the judgment that rested on the preclusive effect of the earlier reversed judgment.[7]

---

**7.** Civil Rule 60(b)(5) provides that a court may    relieve a party from a final judgment when "a

In this case, the AWCB decision was the first final judgment even though it was appealed. The later PERB determination that Holmberg was not physically able to perform her duties at Risk Management cannot preclude AWCB's earlier contrary determination. Indeed, if the other requirements of collateral estoppel were satisfied, Retirement and Benefits could have precluded Holmberg from relitigating the issue already decided by AWCB.

### IV.

Holmberg argues in the alternative that the AWCB decision that she was able to continue her employment at Risk Management should be reversed because it is not supported by substantial evidence. Holmberg correctly observes that the AWCB decision turned on a job analysis of her position as Risk Management Officer II ("RMO II") that B. Sue Roth, a vocational rehabilitation counselor, prepared for the state. The two physicians who testified in the case, Dr. Lenert C. Ceder and Dr. Donald R. Gunn, concluded that Holmberg could perform her job if the job analysis was strictly followed. AWCB relied on these conclusions in deciding that Holmberg could perform her job:

> We have considered [Holmberg's] objections to the accuracy of the on-site job analysis for RMO II. Notwithstanding those objections, we find that [Holmberg] was able to perform her job of RMO II at the time of her retirement and that she is not permanently totally disabled. We rely on the testimony of Dr. Ceder, Dr. Gunn, Ms. Roth, Mr. Thompson and the sedentary nature of the work. Our opinion was influenced by the fact that [Holmberg] was able to change positions as necessary and the extent to which Employer was willing to allow [Holmberg] to modify her job and work environment, even to the extent of allowing her to work part-time.

Holmberg contends that AWCB's conclusion is not supported by substantial evi-

dence because Roth's job analysis was not accurate.

Holmberg raises two objections to the accuracy of the job analysis. First, she points out that although the job analysis says that she can work while seated in any one of three chairs, she testified that she could not use the high stool. Even if correct, this point is insignificant in light of the employer's willingness to further modify her workstation as necessary. Second, Holmberg argues that "Ms. Roth indicated that Ms. Holmberg could perform any task from any position." Holmberg states that this was "[t]he fundamental assumption on which Drs. Ceder and Gunn approved the job analysis...." Holmberg is referring to Roth's statement in her report that "[s]ince Ms. Holmberg spends 75 percent of her time adjusting claims, she has the oppo[r]tunity to utilize any of the three chairs or to stand during this time." Roth's statement does not say that Holmberg could perform any task from any position. At the hearing, Roth admitted that Holmberg could not type or use a computer in the reclining chair. Holmberg cites no authority for her conclusion that Dr. Ceder and Dr. Gunn's findings that she could work consistent with the job analysis were based on such an assumption.

Holmberg has failed to show why Roth's description of Holmberg's work environment and work demands is not accurate. Therefore, Dr. Ceder and Dr. Gunn's conclusions that Holmberg could perform her duties as RMO II consistent with that description provide more than substantial evidence for AWCB's determination that she was able to work.

The decision of the superior court is AFFIRMED.

---

prior judgment upon which [the judgment] is based has been reversed...." This rule itself assumes that a judgment does not lose its pre-

clusive effects merely because it is appealed. Otherwise there would be no occasion to apply the rule.