STATE of Alaska, PUBLIC EM-
PLOYEES' RETIREMENT
BOARD, Appellant,

v.

D. Paul MORTON, Appellee.

No. S–11672.

Supreme Court of Alaska.

Nov. 4, 2005.

Keith B. Levy, Assistant Attorney General, Juneau, Toby N. Steinberger, Assistant Attorney General, Anchorage, and Gregg D. Renkes and David W. Marquez, Attorneys General, Juneau, for Appellant.

Daniel Westerburg, Homer, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

The Alaska Division of Retirement and Benefits terminated the occupational disability benefits of a former public employee who did not recover from his injury and did not return to public employment but who managed to earn more than his former salary. Benefits were terminated pursuant to a Division policy that was unwritten but had been enforced since before the employee's date of hire. Under that policy, known as the "75% rule," an employee is no longer eligible for benefits if he earns outside income of more than 75% of his former salary. The Public Employees' Retirement Board affirmed the termination of benefits, but the superior court reversed the Board's determination. Because we hold that the 75% rule is contrary to statute, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

The facts in this case are undisputed. Appellee D. Paul Morton was hired as a correctional officer for the City of Homer in September 1995. In November 1997 Morton was injured while transporting a prisoner. In November 1998 the Division approved his application for occupational disability benefits. The notification letter indicated that he was required to apply to the Division of Vocational Rehabilitation and that his file would be reviewed in twelve months "for updated medical evidence to determine your continuing eligibility."

On December 15, 1999, the Division sent Morton a letter requesting a physician's statement of continuing disability and a copy of his 1998 tax returns. When Morton asked why the Division wanted to see his tax returns, the Division informed him via e-mail on December 30, 1999 that he would no longer qualify for occupational disability benefits if he earned more than 75% of his former salary. A Division employee later testified that this 75% rule was a standing operating procedure that had been consistently applied by the Division in determining eligibility since before Morton's date of hire in 1995. Morton was not aware of this policy before he received this e-mail; the 75% rule was not mentioned in any statute or regulation then in force, and Public Employees' Retirement System (PERS) members were not informed of this policy when hired or at the time that occupational disability benefits began. Morton provided the requested information.

In the spring of 2002 a similar e-mail exchange occurred, and a Division representative explained the income cap by referring to 2 Alaska Administrative Code (AAC) 35.291, a regulation that officially codified the 75% rule and became effective in January 2001. In June 2002 Morton submitted portions of his 2001 tax return, which indicated that his outside income exceeded 75% of his

former salary. On October 31, 2002, the Division terminated Morton's benefits because he "exceeded the 75% income threshold under PERS Regulation 2 AAC 35.291."

Morton appealed to the Board. At the hearing, Morton did not dispute that his outside income exceeded 75% of his former salary. He testified that he works as a freelance writer, is employed in a part-time position as a manager for psychological services for the Homer Police Department, and has a small counseling practice. He also testified that shortly after his retirement he turned down an offer of employment as managing editor for a magazine in California. He argued that application of the 75% rule to him was unlawful. The Division did not dispute that Morton is still unable to meet the physical demands of his former position. The Division argued that Morton's benefits were properly terminated under its longstanding 75% policy. In its closing argument, the Division argued for the first time that Morton's failure to accept the California job offer constituted an independent reason for the termination of benefits.

On August 11, 2003, the Board concluded that the Division "appropriately applied long standing, consistently applied interpretations of the law and 2 AAC 35.291" and affirmed the termination of Morton's benefits. On August 30, 2004, Superior Court Judge Mark Rindner reversed the Board's decision. The superior court held that applying the 75% rule to Morton would violate Article XII, section 7 of the Alaska Constitution by diminishing Morton's accrued retirement benefits. The superior court also suggested that the 75% rule is "of doubtful validity" because it is inconsistent with the controlling statutes but declined to make a determination on this issue. The superior court also rejected the Division's argument that Morton's failure to accept the job offer in California constituted an alternative ground for upholding the Board's termination of benefits. The Board appeals.

## III. DISCUSSION

### A. Standard of Review

■ "When the superior court acts as an intermediate appellate court, we independently review the merits of the administrative determination."[1] There are several standards of review that may apply to review of administrative decisions.[2] Although we ordinarily review an agency's regulatory decision under the "reasonable but not arbitrary" standard, "when the decision raises a question of statutory interpretation involving legislative intent rather than agency expertise, we review that question independently, applying the substitution-of-judgment standard."[3]

### B. The 75% Rule Is Contrary to Statute.

■ Morton argues that the Board erred in terminating his benefits pursuant to the 75% rule because that rule is inconsistent with the statutes governing occupational disability benefits.[4] He contends that, under the statute, an employee is eligible for an occupational disability benefit if he cannot perform his old job or a comparable position made available by a PERS employer, but has

---

1. *State, Dep't of Natural Res. v. Greenpeace, Inc.,* 96 P.3d 1056, 1061 (Alaska 2004) (quoting *Bruner v. Petersen,* 944 P.2d 43, 47 n. 5 (Alaska 1997) (internal quotation marks omitted)).

2. *See id.* at 1061 n. 10 (explaining that we apply a de novo standard if the agency's expertise provides little guidance to the court or involves statutory interpretations and a reasonable basis standard if reviewing an agency's interpretation of its own regulation).

3. *Alaska Ctr. for the Env't v. Rue,* 95 P.3d 924, 926 (Alaska 2004); *see also Greenpeace,* 96 P.3d at 1061 n. 10 (de novo standard applies if the case concerns "statutory interpretation or other analysis of legal relationships about which courts

have specialized knowledge and experience") (quoting *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971)).

4. Morton also argues that the 75% rule cannot be applied to him because (1) it was unconstitutional to apply the 75% policy to him where that policy had not been enacted as a regulation until after he was hired and (2) application of the policy constituted a breach of Morton's benefits contract. Because we hold that the 75% rule is contrary to statute we need not reach Morton's alternative arguments for reversing the termination of benefits.

found a well-paying job outside the PERS system. We agree.

■ Alaska Statute 39.35.680(26) defines "occupational disability":

> "[O]ccupational disability" means a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education; however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties and not the proximate result of the wilful negligence of the employee.

The term "employer" is defined in AS 39.35.680(17) to mean the State of Alaska or "a political subdivision or public organization of the state that participates in the system." [5] The plain meaning of the statute indicates that occupational disability is defined in terms of an inability to perform one's job or a comparable job which any employer participating in the PERS system makes available. In *Holmberg v. State*, we explained that while disability in the workers' compensation context means an inability to earn the wage the employee was receiving at the time of the injury, under PERS "no consideration of alternative employment with a different [i.e., non-public] employer is required." [6] We noted that this difference stems from the different purposes of the two systems: "While workers' compensation assures that a worker's ability to earn a certain wage is protected, PERS is designed to promote continued public employment." [7] Based on the plain meaning and purpose of the statute, we conclude that a person who is able to perform a comparable job outside the PERS system, but who is unable to perform a PERS job, would still fall within the definition of occupational disability under AS 39.35.680(26).

Alaska Statute 39.35.410 describes eligibility requirements and procedures relating to occupational disability benefits. Subsection (b) states that payments will stop when the employee

(1) dies;

(2) recovers from disability;

(3) fails to meet the requirements under (g) of this section or under AS 39.35.415; or

(4) reaches normal retirement age.[8]

Subsection (g) provides that a disabled employee will undergo a medical examination not more than once a year and that, "[i]f, in the judgment of the administrator, the examination indicates that the retired employee is no longer incapacitated because of a total and apparently permanent occupational disability, the administrator may not issue further disability benefits to the employee." [9]

Morton's benefits were terminated under AS 39.35.410(b)(2) because he allegedly "recover[ed] from disability." This phrase is not defined in the statute. The parties appear to agree that it does not mean recovery from the injury that caused disability, which is already listed as a separate reason for termination in the reference to subsection (g) in AS 39.35.410(b)(3). Rather, an employee "recovers from disability" when he no longer meets the definition for eligibility under AS 39.35.680(26); that is, if he is capable of performing the duties of a "comparable position or job that an employer makes available." The 75% policy, codified into a regulation that became effective in January 2001, is premised on the Division's interpretation that a "comparable position" under AS 39.35.680(26) includes employment by a non-PERS employer that provides income that is

---

**5.** In 2001 this section was amended to add non-profit regional corporations employing village public safety officers to the definition of "employer," but a 2004 amendment deleted this category of employer under the statute. Ch. 97, § 11, SLA 2001; ch. 92, § 29, SLA 2004.

**6.** *Holmberg v. State, Div. of Risk Mgmt.*, 796 P.2d 823, 826–27 (Alaska 1990).

**7.** *Id.* at 826 (quotation omitted).

**8.** AS 39.35.410(b).

**9.** AS 39.35.410(g).

at least 75% of the employee's former PERS salary. The regulation provides:

> Disability benefits cease when a member recovers from an injury or illness and is capable of working in a comparable position for an employer, including self-employment. A "comparable position" may include a position that requires similar strengths and abilities to the position held by the member at the time of termination of employment or a position that provides compensation of 75 percent or more of the salary used to calculate the member's Public Employees' Retirement System of Alaska (PERS) occupational disability benefit, adjusted for inflation. . . . [10]

The Board also adopted a regulation that purports to eliminate the inconsistency between the 75% rule and the statutory definition of occupational disability by modifying the statutory definition of "employer" to include non-PERS employers:

> In the definition of "occupational disability" in AS 39.35.680,
>
> (1) "employer" does not have the meaning given in AS 39.35.680, but rather means any person or entity employing a member of the system; for purposes of this paragraph, "employer" includes the member of the system if the member is self-employed[.] [11]

The 75% policy and the regulations codifying that policy [12] are plainly inconsistent with the statutory definition of "employer" in AS 39.35.680(26).

The Division argues that the term "recovers from disability" in AS 39.35.410(b) should be read without reference to the definition of occupational disability in AS 39.35.680(26).

The Division argues that this phrase should be interpreted to mean recovery from a loss of wage earning capacity because the term "disability" has historically been understood in the context of the Workers' Compensation Act to mean the loss of earning capacity. But we have recognized that the meaning of disability is different under the PERS and workers' compensation statutes because these programs have different goals.[13] In particular, "PERS is designed to promote continued public employment," not to protect "a worker's ability to earn a certain wage." [14] Moreover, the Division's interpretation would result in two different statutory criteria for eligibility: one standard for eligibility for benefits under AS 39.35.680(26) that requires only inability to perform an available PERS job, and a second standard under AS 39.35.410 through which benefits may be terminated based on outside employment. The plain meaning of the statute defining occupational disability as an inability to perform the employee's usual duties or the duties of a comparable position that a PERS employer makes available is clear.[15] We therefore hold that the Board's termination of Morton's benefits pursuant to the 75% rule was unlawful because that policy conflicts with the statutes governing occupational disability benefits.

**C. The Termination of Benefits Cannot Be Affirmed on the Alternate Ground that Morton Failed To Accept a Position Offered to Him.**

■ The Division argues that Morton is ineligible for benefits under AS 39.35.415 because he failed to accept a position offered

---

**10.** 2 Alaska Administrative Code (AAC) 35.291 (10/2001). This is the version of the regulation in effect at the time of Morton's termination. The regulation has since been amended to read in relevant part:

> Occupational disability benefits cease when a member recovers from an injury or illness. Proof of such recovery may include, among other things, medical evidence or proof of capability to work in a comparable position for an employer, including self-employment. A "comparable position" may include a position that requires similar strengths and abilities to the position held by the member at the time of termination of employment or a position that provides a compensation of 75% or more of

the salary used to calculate the member's Public Employees' Retirement System of Alaska (PERS) occupational disability benefit, adjusted for inflation.

2 AAC 35.291(a) (2005).

**11.** 2 AAC 35.990(f)(1) (2005).

**12.** 2 AAC 35.291(a); 2 AAC 35.990(f)(1).

**13.** *See Holmberg*, 796 P.2d at 826–27.

**14.** *Id.* at 826 (quotation omitted).

**15.** *See* AS 39.35.680(17) & (26).

him. Alaska Statute 39.35.415 describes the vocational rehabilitation program for disabled employees. This statute provides in part:

Unless the employee demonstrates cause, benefits shall terminate at the end of the first month in which a disabled employee

(1) fails to report to the division of vocational rehabilitation;

(2) is certified by the division of vocational rehabilitation as failing to cooperate in a vocational rehabilitation program;

(3) fails to interview for a job; or

(4) fails to accept a position offered.[16]

The Division argues that Morton's benefits should be terminated under this statute because he failed to accept a job offer as a managing editor at a California magazine shortly after he retired.

Morton contends that this statute must be harmonized with the eligibility requirements for occupational disability in AS 39.35.680(26), which we have seen permit an employee to earn outside income so long as he is not capable of performing the duties of a comparable job offered by a PERS employer. Morton argues that the Division's interpretation would result in two different sets of statutory criteria for benefits: one for initial eligibility under AS 39.35.680(26), and another for continuing eligibility under AS 39.35.415.

We need not determine whether occupational disability benefits can be terminated under AS 39.35.415 for failure to accept an offer of employment from a non-PERS employer. The Division did not terminate Morton's benefits for failure to accept a job offer under AS 39.35.415. Assuming this statute applies to Morton's California job offer, the statute permits an employee to demonstrate cause why benefits should not be terminated even though he failed to accept a position offered.[17] Without deciding the question, we note that Morton would appear to have some basis for demonstrating cause to reject the job offer because the job was located in another state. Morton never had an opportunity to try to demonstrate cause in this case because the Division attorney did not argue that the termination was justified because of the rejected job offer until his closing argument before the Board. For this reason, we conclude that the Board's termination of Morton's benefits cannot be affirmed because he failed to accept a job offer under AS 39.35.415.

## IV. CONCLUSION

We hereby REVERSE the Board's termination of benefits and AFFIRM the decision of the superior court.