ANCHORAGE POLICE DEPARTMENT
COMMAND OFFICERS' ASSOCIA-
TION, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. S–12284.

Supreme Court of Alaska.

March 7, 2008.

Kevin T. Fitzgerald, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant.

Mark A. Ertischek, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

The Anchorage Police Department Command Officers' Association (APDCOA) petitioned the Anchorage Municipal Employee Relations Board (the Board) for recognition as the collective bargaining representative for fourteen Anchorage Police Department lieutenants and captains. The Board dismissed APDCOA's petition and similarly denied its subsequent motion for reconsideration or supplementation of the record. APDCOA appealed to the superior court, which affirmed the Board's decision. Be-

cause substantial evidence supports the Board's decision that Anchorage Police Department lieutenants and captains are supervisors and are thus exempt from collective bargaining, we affirm.

## II. FACTS AND PROCEEDINGS

The Anchorage Police Department Command Officers' Association petitioned the Board for recognition as the collective bargaining representative for fourteen Anchorage Police Department lieutenants and captains on March 30, 2004. The proposed bargaining unit is meant to fill a perceived gap in police department employee representation: lower ranking employees are represented by the Anchorage Police Department Employees' Association Union, while higher ranking employees, being executives, are exempt from collective bargaining. APDCOA's initial submission to the Board included a petition signed by fourteen lieutenants and captains, as well as class specifications and duty descriptions for the lieutenant and captain positions.

Reviewing these specifications and descriptions, the Board determined that lieutenants and captains perform supervisory tasks. Because supervisors are exempt from collective bargaining under the Anchorage Municipal Code,[1] the Board issued an order to show cause why the APDCOA petition should not be dismissed on that basis. APDCOA asserted that sergeants play greater supervisory roles than lieutenants and captains yet are nonetheless members of the Anchorage Police Department Employees' Association Union. APDCOA also contended that the question whether captains and lieutenants are supervisors is a factual one and maintained that lieutenants and captains are not in fact supervisors within the meaning of AMC § 3.70.010. The Board conducted a hearing on this question on July 15, 2004.

APDCOA and the Municipality of Anchorage both participated in the hearing and submitted timely post-hearing briefs. The Board dismissed APDCOA's petition in a final order dated December 20, 2004 based on a number of grounds. First, the Board

---

1. AMC § 3.70.060C.

found APDCOA had not met its burden of fulfilling the requirements set out in AMC § 3.70.060A. This statute requires the Board to determine appropriate bargaining units considering "such factors as community of interest, wages, hours and other working conditions of the employees involved, the history of collective bargaining and the desires of the employees," while also mandating that bargaining units be as large as reasonably possible, avoiding unnecessary fragmentation. The Board concluded that though APDCOA had proven that the employees desired representation through its petition, it had not proven the requisite community of interest, wages, hours, and other working conditions amongst employees, nor had it established a bargaining history. Viewing these as individual factors, the Board determined that APDCOA had therefore failed to prove five of what it interpreted as seven prongs set forth in AMC § 3.70.060A. The Board also found that captains (though not lieutenants) were confidential employees exempt from collective bargaining under AMC § 3.70.060C(10). Finally, the Board found that both lieutenants and captains were supervisory employees exempt from collective bargaining under AMC § 3.70.060C(2).

Shortly thereafter, APDCOA filed a motion with the Board for reconsideration, or in the alternative, to supplement the record. It contested the Board's interpretation of the factors laid out in AMC § 3.70.060A but claimed that it had nonetheless fulfilled the requirements of the section through the petition and testimony at the hearing. As further proof, APDCOA appended affidavits from its members attesting to their commonality of interest, wages, hours, and other working conditions, along with a 1976 Board memorandum recommending that the Municipal Assembly approve a bargaining unit of command police officers[2] to prove bargaining history. The Board denied the motions for reconsideration and supplementation of the record.

APDCOA appealed to the superior court, asserting that the Board erred in rejecting the unit. It challenged (1) the Board's conclusion that the unit failed to prove enough commonality of interest factors; (2) the Board's finding that lieutenants were supervisory employees and thus exempt from collective bargaining; and (3) the Board's finding that captains were both supervisory and confidential employees exempt from collective bargaining. The superior court affirmed the Board's decision. Although the superior court questioned the factor-counting approach that the Board employed in interpreting AMC § 3.70.060A, the court found that the Board enjoyed broad discretion in determining the appropriateness of collective bargaining units and declined to reweigh the evidence.

APDCOA appeals, renewing its arguments that the Board erred in deciding (1) that Anchorage Police Department lieutenants and captains are supervisors within the meaning of the Code; (2) that captains are confidential employees within the meaning of the Code; and (3) that APDCOA failed to show the required commonality of interests to qualify as an appropriate bargaining unit.

## III. STANDARD OF REVIEW

■■■ "When the superior court acts as an intermediate appellate court, we independently review the merits of the administrative determination."[3] The standard we employ to review administrative decisions depends on the nature of the appeal. For questions of fact, we review administrative decisions under the "substantial evidence" test, examining "whether those findings are supported by such relevant evidence as a reasonable mind might accept to support a conclusion."[4] For questions of law requiring agency expertise, we review administrative decisions under the "reasonable basis" test, deferring to the agency's decision un-

---

2. No such bargaining unit came to fruition.

3. *State, Pub. Employees' Ret. Bd. v. Morton,* 123 P.3d 986, 988 (Alaska 2005) (quoting *State, Dep't of Natural Res. v. Greenpeace, Inc.,* 96 P.3d 1056, 1061 (Alaska 2004)).

4. *Collins v. Arctic Builders, Inc.,* 31 P.3d 1286, 1289 (Alaska 2001).

less it is "plainly erroneous and inconsistent with the regulation." [5]

## IV. THE BOARD DID NOT ERR IN DECIDING THAT LIEUTENANTS AND CAPTAINS ARE "SUPERVISORY EMPLOYEES" EXEMPT FROM COLLECTIVE BARGAINING.

Anchorage Municipal Code § 3.70.060C(2) exempts from collective bargaining "[a]ll supervisory employees as designated by the board upon petition of the municipality." Anchorage Municipal Code § 3.70.010 defines "supervisory employee" as

> an individual having responsibility on behalf of the municipality regularly to participate in the performance of some or all of the following functions with respect to other employees: to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, discipline, direct or adjust grievances, or effectively to recommend such action, if, in connection with [ ] such functions, the exercise of such responsibility is not of a merely routine or clerical nature but requires the exercise of independent judgment.

■ Whether Anchorage Police Department lieutenants and captains are supervisory employees and therefore exempt from collective bargaining is a question of fact, which we review under the "substantial evidence" test.[6] The job descriptions submitted by APDCOA for the captain and lieutenant positions support the Board's finding that these are supervisory roles.

■ According to the class specification, a police lieutenant "[s]upervises and performs administrative work in commanding an assigned shift, or in a comparable specialized function." The specification also states that a lieutenant "[p]rovides supervision for and evaluation of subordinate police personnel; [c]ommands an assigned shift or specialized police function; [i]nspects the performance of [p]atrol [o]fficers and [s]ergeants on duty; . . . [s]upervises and participates in the investigation of major incidents; [and p]lans and directs special operations." The class specification for a lieutenant lists knowledge of "supervisory police work," skills in "supervision," and the ability to "[p]lan, assign, supervise, and review the work of subordinate police personnel," as required. Similarly, the position description assigns thirty percent of the lieutenant's time to work as a " 'second level supervisor' by supervising and directing the shift [s]ergeants (first line supervisors) in the implementation of their duties as direct supervisors of all assigned [d]etectives," and also provides that the lieutenant "[r]eviews and resolves labor/management disputes" and "[r]eviews and approves disciplinary procedures a[t] all levels, through termination actions for employees." Moreover, item 23 of the position description, entitled "supervisory responsibilities," is checked "yes" to reflect that "the position directly supervises others on a regular basis." The position's supervisory responsibilities include the authority to hire, assign, reward, promote, transfer, lay off, discipline, and discharge subordinates as well as to settle grievances.

■ The class specification for the captain position also characterizes captains as supervisors. The captain's duties include "assignment of personnel and equipment [and] discipline of subordinate employees." Captains are charged with "[p]rovid[ing] the full range of supervision for subordinate personnel" and "[c]oordinat[ing] the investigation of allegations of employee misconduct." And in another section, the class specification demands that captains have the ability to "plan and supervise work of subordinate personnel," while the position description devotes ten percent of the captain's time to reviewing and resolving labor disputes, coordinating the investigation of employee misconduct, and administering appropriate discipline. Once again, item 23 is checked "yes," indicating that this position "directly supervises others on a regular basis." This includes the authority to hire, assign, reward, promote, transfer, lay off, discipline, and discharge subordinates as well as to settle grievances.

Several witnesses testified before the Board regarding this issue, including Lieu-

**5.** *Greenpeace,* 96 P.3d at 1061 n. 10 (internal citations omitted).

**6.** *Collins,* 31 P.3d at 1289.

tenant Lorraine Shore, Captain Thomas Nelson, Chief of Police Walter Monegan, and Elizabeth Hill, Director of Human Resources for the Anchorage Police Department. And APDCOA has "conceded that its members performed some limited functions[,] which could otherwise be considered supervisory under the [C]ode's definition." But APDCOA maintains that the testimony at trial showed that these supervisory roles were not performed "regularly or with independent judgment," as the statute requires. Given this acknowledgment, we are left with the following question: does substantial evidence support the Board's finding that lieutenants and captains perform these supervisory duties regularly and with independent judgment? The class specifications and position descriptions detailed above suggest that the answer is "yes," and the testimony and arguments presented at the hearing support the Board's finding. Although APDCOA points to some testimony that these duties are performed less than regularly or without independent judgment, the Board did not find that testimony credible. As the Board put it: "We acknowledge that APDCOA's witnesses tended to minimize the importance of the duties they performed. We nonetheless find that the weight of the evidence establishes that lieutenants and captains perform supervisory duties on behalf of the Municipality, and that they use independent judgment in performing those duties."

APDCOA describes as "limited," "constrained," and "irregular" its members' involvement in transfers, promotions, assignments, and discipline, all tasks defined by the Code as supervisory. APDCOA also relies on cases from other jurisdictions for the proposition that a position generally characterized as supervisory is not necessarily exempt from collective bargaining. Beyond the fact that they did not involve the Anchorage Municipal Code, these cases upheld administrative decisions that particular employees were *not* supervisors, with some highlighting the special deference that the administrative body enjoyed in this particular determination.[7] Moreover, it does not appear that the Board rested on just a general characterization in its decision here. After reading APDCOA's submitted materials and hearing all the testimony, the Board found "that the weight of the evidence establishes that the lieutenants and captains perform supervisory duties on behalf of the Municipality, [ ] that they use independent judgment in performing those duties," and that "the Municipality carried its burden of proof with respect to the supervisory status of lieutenants and captains." Substantial portions of the evidence found credible by the Board support its decision that the supervisory roles of captains and lieutenants are performed regularly and with independent judgment. The Board's decision is therefore affirmed.[8]

## V. CONCLUSION

For the reasons detailed above, we AFFIRM the decision of the Anchorage Municipal Employee Relations Board.

BRYNER, Justice, not participating.

---

**7.** *See, e.g., Providence Alaska Med. Ctr. v. Nat'l Labor Relations Bd.,* 121 F.3d 548, 551 (9th Cir. 1997) (upholding the Board's determination that employee was not a supervisor and noting that "[b]ecause the Board has expertise 'in making the subtle and complex distinctions between supervisors and employees, ... the normal deference [we] give to the Board is particularly strong when it makes those determinations' " (internal citation omitted)); *J.L.M., Inc. v. Nat'l Labor Relations Bd.,* 31 F.3d 79, 82 (2d Cir.1994) (upholding the Board's determination that employee was not a supervisor and noting that "[t]he Board's findings regarding supervisory determinations are entitled to 'special weight' ").

**8.** Because we conclude the Board did not err in deciding that lieutenants and captains are supervisors within the meaning of the Code, they are exempt from collective bargaining, and we need not reach the other arguments on appeal.