**Betty R. McKEAN, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. S–2494.

Supreme Court of Alaska.

Dec. 8, 1989.

Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellant.

Trena L. Heikes, Russell & Tesche, Anchorage, for appellee.

Peggy Mentele, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellee State of Alaska, Dept. of Labor Workers' Compensation Bd.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Betty McKean (McKean) appeals from a judgment of the superior court which affirmed a decision and order of the Alaska Workers' Compensation Board (Board). The Board held that McKean was precluded from requesting an adjustment of her average weekly wage because the amount of her disability benefits had previously been determined by the Board and therefore the doctrine of res judicata acted to bar further consideration of the issue. The principal question on appeal is whether the Board was correct in concluding that the doctrine of res judicata was applicable in a proceeding to determine permanent total disability where the initial average weekly wage determination was made in a proceeding to determine temporary total disability. We reverse.

## I. FACTS AND PROCEEDINGS

McKean was hired by the Municipality of Anchorage (Municipality) as a bus driver in November 1977. Six months later McKean suffered a non-work related injury to her knee causing her to miss approximately one year of work. Within the first eight months after her return to work McKean sustained three successive work-related injuries. Her first injury occurred when the wind caught the bus door as she was trying to pull it closed. A doctor diagnosed McKean as having a mild sprain of the cervical spine and right shoulder. Two weeks later the wind once again caught the bus door as McKean was trying to close it and she resprained her spine and shoulder. The final injury occurred on February 19, 1980 when McKean fell on some ice while leaving her bus. The fall caused further injury to her spine.

The Municipality began paying McKean temporary total disability benefits after the February 1980 injury. It terminated McKean's employment and benefits in May

1980. McKean requested a hearing before the Board. The Board, by decision and order dated September 23, 1982, determined that McKean was entitled to continuing temporary total disability benefits, under AS 23.30.220(3).

McKean's temporary total disability status was converted to permanent total disability status in 1985 as a result of an agreement between McKean and the Municipality. McKean then applied to the Board for a redetermination of benefits to reflect her change of status. The Board concluded that the doctrine of res judicata precluded McKean from requesting further adjustment of her benefits. The superior court affirmed the Board's decision. McKean appeals.

## II. DISCUSSION

McKean argues that the Board erred in applying res judicata to bar her claim for adjustment of her compensation rate. She asserts that the categories of temporary total disability and permanent total disability serve different purposes and therefore may require separate compensation rate determinations.

 The issue before us involves no dispute of fact. It concerns a question of law and an interpretation of the Alaska workers' compensation statute in effect at the time the injuries were sustained. Where an issue turns on the interpretation of a statute, we are free to consider independently the proper application and interpretation of the statute. *Hood v. State, Workmen's Compensation Board,* 574 P.2d 811, 813 (Alaska 1978).

 The Board, the superior court and the parties use the term "res judicata" in its broad sense to include the doctrine of collateral estoppel. "The doctrine of 'estoppel' relates to the effect of a prior judgment as conclusively determining disputed issues which arise again in a second proceeding." *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 n. 11 (Alaska 1979).

Traditionally, the doctrine of res judicata developed in a judicial setting. 46 Am. Jur.2d *Judgments* §§ 394, 446 (1969). We

have held, however, that the doctrine "may be applied to adjudicative determinations made by administrative agencies." *Jeffries*, 604 P.2d at 8. Furthermore, it is well-settled that res judicata may be applied to decisions of workers' compensation boards. *See, e.g., Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir.1982); *Hazel v. Alaska Plywood Corp.*, 16 Alaska 642, 648 (D.Alaska 1957); *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197, 1202 (1982); 2 K. Davis, Administrative Law Treatise § 18.03 (1958); 3 A. Larson, The Law of Workmen's Compensation § 79.72(a) (1983). Notwithstanding its general applicability, res judicata is not always applied as rigidly to preclude issues in workers' compensation proceedings as it is in judicial proceedings. *Thompson*, 665 F.2d at 940; 3 A. Larson, *supra.*

Because the doctrine of res judicata is applicable to workers' compensation proceedings, we must examine the facts to determine whether res judicata may be applied in this case. The following are the prerequisites to the proper application of the doctrine:

 1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

 2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

 3. The issue in the first action must have been resolved by a final judgment on the merits.

*Murray v. Feight*, 741 P.2d 1148, 1153 (Alaska 1987).

The first prerequisite, McKean's involvement in the first action, is easily satisfied in the present case. McKean was obviously a party to the first benefit determination and she is the one against whom the doctrine of res judicata is now being asserted.

The second prerequisite, however, is not satisfied. The issue which the Board found to be precluded from relitigation in the 1986 Board proceeding by operation of collateral estoppel—McKean's compensation rate—is not identical to the issue presented to the Board in the 1982 proceeding.

In the 1982 proceeding the Board determined three issues: (1) whether McKean was still disabled as a result of her work-related injuries and, if so, what was the extent of the disability; (2) whether McKean had failed to cooperate with rehabilitation; and (3) whether McKean's compensation rate should be determined under former AS 23.30.220(2) or former AS 23.30.220(3).[1] The Board found that McKean was disabled as a result of her injuries and that she had not refused to cooperate with rehabilitation. Therefore, the Board concluded that McKean was entitled to continuing temporary total disability benefits. In addition, the Board determined that

---

1. The statutory provisions relevant to this opinion read as follows:

 (Former) AS 23.30.180 *Permanent total disability.* In case of total disability adjudged to be permanent 66⅔ per cent of the injured employee's average weekly wages shall be paid to the employee during the continuance of the total disability. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two of them, in the absence of conclusive proof to the contrary, constitutes permanent total disability. In all other cases permanent total disability is determined in accordance with the facts.

 (Former) AS 23.30.185 *Compensation for temporary total disability.* In case of disability total in character but temporary in quality, 66⅔ per cent of the injured employee's average weekly wages shall be paid to the employee during the continuance of the disability.

 (Former) AS 23.30.220 *Determination of Average Weekly Wage.* Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:

 (1) Repealed by § 11 ch 75 SLA 1977.

 (2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

 (3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board;

 . . . .

McKean's wage could not be fairly calculated using the average wage formula under AS 23.30.220(2). Therefore the Board calculated her benefits under AS 23.30.220(3). The Board made benefits contingent in two respects: first, benefits would continue only so long as McKean remained unable to return to suitable gainful employment; and second, if McKean failed to cooperate with vocational rehabilitation efforts, the Municipality could petition for suspension of benefits.

The 1982 decision must be read in light of McKean's temporary total disability status. The factors to be considered when determining compensation rate vary depending upon the employee's status. "It is a rudimentary principle of workmen's compensation law that there are four separate and distinct categories of compensable disability: (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total. Compensation for each category of disability reflects a unique set of policy considerations." *London v. Fairbanks Mun. Util. Employers Group*, 473 P.2d 639, 642 (Alaska 1970).

Although we have never directly faced the issue of the policy differences between permanent and temporary disabilities in determining compensation rates, we have recognized in earlier opinions the potential significance of the distinction. *See Peck v. Alaska Aeronautical, Inc.*, 756 P.2d 282, 286 (Alaska 1988); *Deuser v. State*, 697 P.2d 647, 650 (Alaska 1985). Both *Peck* and *Deuser* cite *Argonaut Ins. Co. v. Industrial Accident Comm'n*, 57 Cal.2d 589, 21 Cal.Rptr. 545, 548, 371 P.2d 281, 284 (1962), with respect to this issue.

In *Argonaut*, the employee's injury resulted in temporary total disability and permanent partial disability. *Id.* 21 Cal.Rptr. at 546, 371 P.2d at 282. The Industrial Accident Commission (comparable to Alaska's Workers' Compensation Board) made only one estimate of the employee's earning capacity, based on evidence sufficient to support only the award for temporary total disability. *Id.* It then used this estimate to determine the awards for both the temporary and permanent disability claims.

*Id.* The Supreme Court of California upheld the award for temporary total disability, stating that the evidence before the commission was sufficient to support the award. *Id.* at 547, 371 P.2d at 283. However, it annulled the award for permanent partial disability because it was not supported by the evidence. The court held that:

An estimate of earning capacity is a prediction of what an employee's earnings would have been had he had not been injured. Earning capacity, for the purposes of a temporary award, however, may differ from earning capacity for the purposes of a permanent award. In the former case the prediction of earnings need only be made for the duration of the temporary disability. In the latter the prediction is more complex because the compensation is for loss of earning power over a long span of time. Thus an applicant's earning capacity could be maximum for a temporary award and minimum for a permanent award or the reverse. Evidence sufficient to sustain a maximum temporary award might not sustain a maximum permanent award. In making an award for temporary disability, the Commission will ordinarily be concerned with whether an applicant would have continued working at a given wage for the duration of the disability. In making a permanent award, long-term earning history is a reliable guide in predicting earning capacity, although in a variety of fact situations earning history alone may be misleading. With regard to both awards all facts relevant and helpful to making the estimate must be considered.

*Argonaut*, 21 Cal.Rptr. at 548, 371 P.2d at 284.

Although *Argonaut* is not precisely analogous to the case at bar—in *Argonaut* the status categories were temporary total disability and permanent *partial* disability while here we are concerned with the interface between temporary total disability and permanent *total* disability—*Argonaut* aptly illustrates how the relevant factors used to determine compensation rates for each status are different. The factors support-

ing an award for temporary total disability are not the same as the factors that would support an award for permanent total disability. For example, underlying the Board's 1982 decision was the thought that McKean could "return to some degree of gainful employment." Obviously this has not turned out to be the case. Thus it is clear that the issues before the Board in the 1982 and 1986 hearings were not the same and the second prerequisite for the use of collateral estoppel has not been met.[2]

The Alaska workers' compensation statute provides the same formula to be used in determining the compensation rate for those with temporary or permanent total disability status—average weekly wage as calculated under former AS 23.30.220—, however, the actual figures to be used in making the calculation may differ according to the employee's circumstances at the time of the determination. McKean must be given the opportunity to present evidence she believes is relevant in determining her permanent total disability compensation rate and her justification for its use. The Board can then exercise its judgment, assured that all the relevant considerations are before it, to determine McKean's compensation rate.

■ The superior court, in affirming the 1986 Board decision, did not rely solely on the doctrine of res judicata. The superior court also stated that the Board had no authority to adjust McKean's compensation rate absent an express statutory grant of authority or necessarily implied authority. We hold, however, that what is required is not an adjustment of McKean's temporary total disability compensation rate, but an initial determination of her permanent total disability compensation rate. The Board's authority to determine this rate is clear from the statute. Former AS 23.30.180.

The State and the Municipality further argue that the Board should not be required to make periodic or cost-of-living adjustments to total disability benefits.

This issue is not presented in this appeal and therefore will not be addressed.

### III. CONCLUSION

The superior court's affirmance of the 1986 Board decision is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

BURKE, Justice, with whom MOORE, Justice, joins, dissenting.

Because I believe the doctrine of res judicata was properly applied to McKean's request for a recalculation of her average weekly wage, and because neither the "fairness doctrine" of former AS 23.30.-220(3) nor the authority under AS 23.30.130 to modify awards mandates a recalculation based solely on inflationary increases in comparable salaries, I would affirm the court's affirmance of the Board's decision. Therefore, I dissent.

---

**2.** Because the second prerequisite has not been met, we need not discuss the applicability of the

third prerequisite for the use of collateral estoppel.