NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HUGO ROSALES, | ) | |
| | ) | Supreme Court No. S-16373 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 14-027 |
| | ) | |
| ICICLE SEAFOODS, INC. and | ) | MEMORANDUM OPINION |
| SEABRIGHT INSURANCE CO., | ) | AND JUDGMENT* |
| | ) | |
| Appellees. | ) | No. 1643 – July 19, 2017 |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Hugo Rosales, pro se, Somerton, Arizona, Appellant. Richard A. Nielsen, Nielsen Shields PLLC, Seattle, Washington, for Appellees.

Before: Winfree, Maassen, Bolger, and Carney, Justices. [Stowers, Chief Justice, not participating.]

## I.    INTRODUCTION

A worker injured on a fish-processing ship entered into a global settlement of both his workers' compensation claim and his maritime lawsuit. As part of the workers' compensation settlement he waived future medical benefits. The Alaska Workers' Compensation Board approved the settlement after a hearing. The worker later

---

\*    Entered under Alaska Appellate Rule 214.

asked the Board to set aside the settlement, but it refused to do so. After unsuccessful appeals to the Alaska Workers' Compensation Appeals Commission and this court, the worker again tried to set aside the settlement and reopen his workers' compensation case, alleging he had been denied due process in the course of the first set-aside proceeding. The Board decided the res judicata doctrine applied to bar the second set-aside claim. The Commission affirmed the Board's decision, concluding the worker had a full and fair opportunity to litigate the issues he raised. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

This case is before us for the second time. In *Rosales v. Icicle Seafoods, Inc.* (*Rosales I*)[1] we affirmed the Commission's decision affirming the Board's refusal to set aside a compromise and release agreement between Hugo Rosales and Icicle Seafoods, Inc. We include a brief factual summary from the first appeal.

While working for Icicle on a fish-processing boat a tray of frozen fish weighing about 54 pounds fell from a cart and hit Rosales's head.[2] He "reported losing consciousness," received some treatment on the ship, worked a few days after the injury, and was later seen at the Dillingham hospital.[3] The doctor there restricted Rosales to light duty work for several days but, rather than return to the ship, he returned to his home in Arizona.[4] Rosales later filed a report of injury with the Alaska Workers' Compensation Board[5] claiming injuries to his head, neck, low back, and left foot.

---

[1]    316 P.3d 580, 589 (Alaska 2013).

[2]    *Id.* at 582.

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

Rosales initially represented himself before the Board, but a Seattle attorney later entered an appearance on his behalf and also filed a maritime claim against Icicle in Washington state court.[6] The parties entered into a global settlement of both cases; under the settlement Icicle paid Rosales $200,000, of which he received about $113,000 after attorney's fees and costs, and as part of the workers' compensation case Rosales agreed to waive reemployment and future medical benefits.[7] The settlement required Icicle to pay Rosales $195,000 when the documents were executed and an additional $5,000 after the Board approved the settlement.[8]

Rosales filed a pro se workers' compensation claim while the settlement was pending before the Board, but his attorney withdrew the claim.[9] The Board initially rejected the settlement, required the parties to file a copy of the maritime settlement, and asked the parties to set a hearing.[10] At the hearing Rosales asked for more time to consider the settlement, and the Board granted his request.[11] Icicle then sent a letter to Rosales's attorney "claiming that Rosales was in breach of the agreement" and "request[ing] return of the $195,000 . . . or 'an affirmative statement'" from Rosales that he wanted the Board to approve the settlement.[12] At the subsequent Board hearing

---

[6] *Id.*

[7] *Id.* at 582-83. Icicle also agreed to pay a medical lien for surgery on Rosales's neck.

[8] *Id.*

[9] *Id.* at 583.

[10] *Id.*

[11] *Id.*

[12] *Id.*

Rosales testified "that he wanted the Board to approve the settlement; that he understood he would not receive any more workers' compensation benefits, including future medical benefits; and that he understood it was 'virtually impossible' to set the agreement aside" after the Board approved it;[13] he also testified he thought the settlement was in his best interest.[14] The Board approved the settlement in early 2010.[15]

In October 2010 Rosales sought modification of the settlement. He alleged the Board did not have all of his medical records, including records from Dr. Feldman, one of his treating physicians, at the time it approved the settlement.[16] He also made claims about misrepresentation and duress based on the absence of medical records and on the letter demanding return of the money.[17] After a hearing the Board denied the modification request, finding "there had been no misrepresentation or duress" and Rosales's claims that he had not been "properly informed about the settlement or the benefits he was waiving" and that he "felt coerced or under duress" were not credible.[18] On appeal the Alaska Workers' Compensation Appeals Commission decided that substantial evidence in the record supported the Board's decision, and we affirmed the Commission's decision.[19]

---

[13]     *Id.*

[14]     *Id.*

[15]     *Id.*

[16]     *Id.*

[17]     *Id.* at 583-84, 587.

[18]     *Id.*

[19]     *Id.* at 584, 589.

In his appeal to the Commission and then to this court Rosales raised an issue about hearing officer bias based on his contention that the hearing officer had, within two years before his case came before her, represented Icicle's insurer, Seabright Insurance Company, in a workers' compensation case.[20] We concluded — considering the limited legal arguments Rosales raised — that the hearing officer "did not have a disqualifying conflict of interest."[21]

Not long after our *Rosales I* decision Rosales filed a new petition with the Board, again seeking to set aside the settlement. Icicle asked the Board to dismiss the petition. In response to Icicle's argument that his claims had already been fully adjudicated, Rosales contended that his due process rights had been violated, the previous decisions were clearly erroneous and manifestly unjust, and the law of the case was ignored.

Rosales filed another workers' compensation claim about three weeks after he filed the petition. Rosales tried to join as parties to the Board proceeding Mike Monagle, the director of the division of workers' compensation at the time Rosales filed the second petition to set aside the settlement, and Janel Wright, the chief of the adjudications section of the Board at that time. Rosales contended that they should be parties to the case to clarify and interpret specific provisions of the Alaska Workers' Compensation Act (Act).

In the course of the new claim Rosales tried to obtain from Icicle copies of his entire file, focusing on a July 21, 2009 vocational report by William Skilling, who had evaluated Rosales on Icicle's behalf. Icicle did not produce the documents and later asked for a protective order preventing Rosales from subpoenaing three witnesses, one

---

[20]    *Id.* at 588-89.

[21]    *Id.* at 589.

of them Skilling, to a Board hearing on his petition. At a prehearing conference a Board hearing officer orally denied Rosales's joinder and discovery petitions. Rosales again raised the issue of hearing officer bias and during the course of the proceedings made a formal agency complaint against the former hearing officer after a Board employee told him how to do so.[22]

In July 2014 Rosales filed several documents with the Board along with a notice that he intended to rely on the documents. Among the documents was a settlement sheet from his former attorney indicating the attorney had withheld approximately one-third of the workers' compensation portion of the settlement for attorney's fees before forwarding the balance to Rosales.

The Board held a hearing in July 2014 on multiple issues, including Icicle's petition to dismiss on res judicata grounds. At Rosales's request an interpreter was present to make sure the Board fully understood him. The Board hearing chair also asked Rosales to let them know if he could not understand the panel members so they could ask the interpreter to translate for them as well.

Rosales contended his due process rights had been violated in his first attempt to set aside the settlement agreement. He asked the Board to overrule the earlier oral decisions denying his joinder and discovery requests. He claimed the discovery was needed to show that Icicle misrepresented to the Board that it had filed all documents related to reemployment benefits. He argued his former attorney had improperly withheld one-third of the workers' compensation portion of the settlement and

---

[22] The hearing officer who presided at both the hearing to approve the settlement and the first hearing to set it aside was no longer working for the Board when Rosales filed his second petition to set aside the settlement. But the outcome of Rosales's complaint against the first hearing officer did not become available to him until after the Commission decided his second appeal.

complained that the Board hearing officer in the first hearing had not revealed her prior representation of Icicle's insurer. He contended his due process rights had been violated during the first proceeding "because the evidence [he] presented was not considered appropriately."

Icicle argued that res judicata barred all of the issues Rosales raised and asked the Board to award it attorney's fees against Rosales. Icicle agreed it was improper for Rosales's attorney to withhold part of the workers' compensation settlement, but argued that any remedy Rosales had was against his former attorney.

In its written decision the Board affirmed the oral denials of discovery and joinder and refused to set aside the settlement agreement. The Board dismissed Rosales's 2013 workers' compensation claim and denied Icicle's request for attorney's fees. The Board decided that res judicata applied to the request to set aside the settlement and that, because the settlement was fully enforceable, Rosales's 2013 workers' compensation claim should be dismissed. The Board disapproved of Rosales's former attorney's conduct, noting that his "actions could constitute a misdemeanor" under Alaska law. The Board instructed Rosales to "seek a remedy by serving [the] decision and order" on the attorney and to follow up with the Washington State Bar Association if Rosales was "unable to achieve a satisfactory resolution."

Rosales appealed to the Commission. Rosales made at least two motions to disqualify some commissioners from hearing his appeal; those motions were denied. Rosales also asked the Commission to stay the proceedings so that he could bring to the Board new evidence related to the agency investigation of his complaint against the former Board hearing officer. The Commission denied that request because "the prior chair [was] not a member of the panel that will decide the present appeal."

On the merits the Commission affirmed the Board's decision. The Commission's decision focused on Rosales's opportunity to litigate the issues the first

time he tried to set aside the settlement agreement. It decided that he had a full and fair opportunity to litigate the case, but it did not directly address questions related to the alleged bias of the former hearing officer. Rosales appeals.

## III. STANDARD OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's.[23] "Whether res judicata applies is a question of law that we review de novo."[24]

## IV. DISCUSSION

### A. The Commission Correctly Concluded That Res Judicata Prevented Rosales From Setting Aside The Settlement And Reopening His Workers' Compensation Claim.

The Board and the Commission both decided that res judicata prevented Rosales from again litigating the question of setting aside the settlement and reopening his claim. Rosales's main contention on appeal is that the arguments he made in his first attempt to set aside the settlement were either misunderstood or ignored and that he therefore should not be subject to res judicata because he did not have a full and fair opportunity to litigate his case. He maintains his due process and equal protection rights were violated. He presents in this appeal an additional and slightly different argument about the former hearing officer's failure to disclose her prior representation of Icicle's insurer. Finally, Rosales argues the parties to this appeal are not the same as the parties in the first appeal, claiming that the Board is now a party. Icicle responds that res

---

[23] *Rosales I*, 316 P.3d at 584 (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[24] *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (quoting *Smith v. CSK Auto, Inc.* (*Smith I*), 132 P.3d 818, 820 (Alaska 2006)).

judicata governs all of Rosales's arguments and asks us to affirm the Commission's decision.

The doctrine of res judicata, or claim preclusion, "implements the 'generally recognized public policy' that there must be some final and conclusive end to litigation."[25] "A judgment is given res judicata effect by this court when it is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[26] Res judicata "precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then."[27] "The question . . . whether the cause of action is the same does not rest on the legal theory asserted but rather on whether the claims arise out of the same transaction — the same set of underlying facts."[28] Even when a claim arises out of the same cause of action, "[i]t is a well-established principle that no decision may constitute res judicata if the party against whom it is asserted has not had a full and fair opportunity

---

[25]     *Weber v. State*, 166 P.3d 899, 902 (Alaska 2007) (quoting *Nelson v. Jones*, 787 P.2d 1031, 1033 (Alaska 1990)).

[26]     *Patterson*, 303 P.3d at 497 (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)).

[27]     *Id.* (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981)).

[28]     *Angleton*, 238 P.3d at 614 (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 141 (Alaska 2004)).

to litigate his claims."[29] Res judicata applies to administrative proceedings, but "it is not always applied as rigidly in administrative proceedings as it is in judicial proceedings."[30]

Rosales's arguments that res judicata should not bar his second petition to set aside the settlement and his new workers' compensation claim rest on his assertion that he did not have a full and fair opportunity to litigate his claim. He relies primarily on *Ferguson v. State, Department of Corrections*,[31] but *Ferguson* is clearly distinguishable because its outcome rested on procedural rules related to class actions.[32] *Ferguson* involved a challenge to the drug-testing procedures at the Palmer Correctional Center.[33] Ferguson was a class member of an earlier class action that had addressed drug-testing procedures in Alaska prisons, even though he had not been incarcerated at the time of the class action; the superior court held that the class action barred Ferguson from bringing his lawsuit.[34] We reversed this decision because courts typically apply claim preclusion to an absent class member in subsequent litigation only if the class representatives adequately protected the absent class member's interest, and we held that the class representatives "did not adequately represent Ferguson's interests" about the

---

[29] *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1253 (Alaska 2001) (alteration in original) (quoting *Pirela v. Vill. of N. Aurora*, 935 F.2d 909, 913 (7th Cir. 1991)).

[30] *Robertson v. Am. Mech., Inc.*, 54 P.3d 777, 779-80 (Alaska 2002) (citing *McKean v. Municipality of Anchorage*, 783 P.2d 1169, 1171 (Alaska 1989)).

[31] 816 P.2d 134 (Alaska 1991).

[32] *Id.* at 138-39 & n.8.

[33] *Id.* at 135-37.

[34] *Id.* at 137-38 & n.7.

drug-testing procedures.[35] Rosales's case is subject to a different analysis because he entered into a settlement as an individual and his previous attempt to set aside the settlement was made as an individual.

We agree with the Commission that Rosales had a full and fair opportunity to litigate the issues he raises here, even if he did not in fact raise them in the course of the first proceeding, so that res judicata bars his current claim.[36] Because Rosales is self-represented and appears to misunderstand some concepts, we will explain our reasoning in detail.

### 1.    The Board followed statutory and regulatory requirements.

Rosales argues in this appeal, as he did in *Rosales I*, that the Board failed to follow its regulations in approving the settlement and in refusing to set it aside.[37] Because these claims were actually raised or could have been raised in *Rosales I*, they are barred by res judicata.

---

[35]    *Id.* at 138-39.

[36]    We reject Rosales's assertion that res judicata does not apply because the Board is now a party to the case. Simply because he accuses the Board of bias does not make the Board a party, and we agree with the Board that there was no legal basis for joining Board staff. We also reject Rosales's argument that res judicata does not apply when an issue was not discussed in the prior decision. Errors may be legally harmless or have no merit and can be summarily disposed on review. *See, e.g.*, *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 795-96 (Alaska 2002) (listing some claims dismissed as "meritless" and "having no basis in the law"). Any argument that could have been raised but was not is precluded by res judicata, *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981)), so the mere fact that an argument was raised and not discussed does not remove the relitigation bar.

[37]    316 P.3d 580, 585-89 (Alaska 2013).

Alaska Statute 23.30.012(a) requires that a "memorandum of the [settlement] agreement" be filed with the Board. A written settlement agreement was filed in Rosales's case. The Board asked for and received a copy of the maritime settlement in addition to the workers' compensation settlement agreement to better ascertain whether the workers' compensation settlement was in Rosales's best interest. Alaska Statute 23.30.012(b) required the Board to review the settlement because Rosales was represented by an attorney who was not licensed to practice in Alaska. The Board complied with this requirement: The Board examined the settlement when it was filed, initially declined to approve it, asked for additional information including a copy of the maritime settlement, and held two hearings about Rosales's best interest.[38] Subsection .012(b) requires the settlement to "conform to the provisions of" the Act, and we see nothing to suggest the settlement did not meet this requirement.

Additionally the statute permits, but does not require, the Board to order an impartial medical examination.[39] Rosales contends that a second independent medical examination was needed, but there is no evidence he or his attorney asked for one before the Board approved the settlement.[40] And we held in *Seybert v. Cominco Alaska Exploration* that AS 23.30.012(b) did not require the Board to order an impartial medical examination even when the records available to the Board indicated the claim "could

---

[38]     *Id.* at 583.

[39]     AS 23.30.012(b).

[40]     The parties listed in the settlement agreement a dispute about medical treatment, with Rosales taking the position that he might need further medical care and Icicle taking the position that he was medically stable. Rosales's attorney told the Board that doctors' opinions about Rosales's future medical care "were taken into account" when settling the case. Because the parties informed the Board they disputed medical stability and had reached a settlement of the issue, the Board was not required to make a searching inquiry or detailed findings about Rosales's medical condition.

involve permanent total disability."[41]  The Board thus complied with statutory requirements.

The Board's regulations require that a settlement conform to AS 23.30.012 and that it:

> (1)   be accompanied by all medical reports in the parties' possession, except that, if a medical summary has been filed, only those medical reports not listed on the summary must accompany the agreed-upon settlement;
>
> (2)   include a written statement showing the employee's age and occupation on the date of injury, whether and when the employee has returned to work, and the nature of employment;
>
> . . . .
>
> (4)   state in detail the parties' respective claims;
>
> (5)   state the attorney's fee arrangement between the employee . . . and the attorney, including the total amount of fees to be paid[.][42]

The regulation presumes a settlement is not in the employee's best interest when the settlement waives medical benefits, permanent benefits before medical stability, or "benefits during rehabilitation training after the employee has been found eligible for benefits under AS 23.30.041(g)."[43]  But, as we observed in *Rosales I*, the regulation nonetheless permits the Board to "approve the settlement if an employee shows that

---

[41]    182 P.3d 1079, 1091 (Alaska 2008).

[42]    8 Alaska Administrative Code (AAC) 45.160(c) (2011).

[43]    8 AAC 45.160(e).

waiver is in his best interests."[44] Rosales makes two arguments related to the regulation, one based on 8 AAC 45.160(c) and one based on 8 AAC 45.160(e).

Rosales contends the Board failed to follow subsection (c) because his medical records had not all been submitted before settlement approval and his attorney did not file an affidavit related to fees. In this appeal Rosales focuses on Dr. Feldman's medical records and deposition. The absence of those records was litigated in *Rosales I*, although we did not specifically address the contents of Dr. Feldman's records.[45]

The regulation imposed on Rosales and his attorney, as well as Icicle and its attorney, a duty to file "all medical reports" in their possession.[46] The only medical records from Dr. Feldman are chart notes; we agree with the Commission that a deposition is not a "medical report." Because Dr. Feldman was Rosales's treating physician and his opinion presumably supported Rosales's claim, it was incumbent on Rosales or his attorney to comply with this regulation and file the chart notes with the Board if they wanted the Board to consider the chart notes when assessing Rosales's best interest.[47] The parties were not *required* to file Dr. Feldman's deposition before the

---

[44]     316 P.3d 580, 586 (Alaska 2013) (citing 8 AAC 45.160(e)).

[45]     *Id.* at 585 n.25. *Rosales I* discussed other medical and vocational reports that had not been submitted to the Board before it approved the settlement. *Id.* at 585-86.

[46]     8 AAC 45.160(c)(1). Another regulation discusses the process for filing medical reports with the Board. *See* 8 AAC 45.052. After a written claim is filed, that regulation imposes a duty on the party receiving a medical report to file it with the Board. 8 AAC 45.052(d).

[47]     Rosales alleges that his attorney asked the Board to dismiss the claim "because he wanted [to] pursu[e] the maritime claim." Our review of the record shows only that Rosales's attorney withdrew a claim Rosales filed in late 2009, after the settlement was filed with the Board but before the hearing about approving the settlement. Because the attorney continued to represent Rosales the Board could rely on

(continued...)

Board could consider and approve the settlement, and its absence was not a regulatory violation. But nothing prevented Rosales or his attorney from filing the deposition with the Board before the settlement was filed.[48]

The Commission reviewed the medical records in this appeal and summarized their contents to evaluate Rosales's legal arguments. Rosales takes issue with the Commission's characterization of Dr. Feldman's chart notes as "consistent with Dr. Ginsberg's assessment,"[49] but Dr. Feldman's chart notes and deposition both indicate that Rosales was not a candidate for further surgery, would benefit from prescription medication and physical therapy, and might benefit from injections. Dr. Ginsberg did not recommend surgery but recommended physical therapy and pain medication.

We understand Rosales's argument to be that Dr. Feldman's deposition and chart notes showed Rosales was not medically stable and was in need of continuing, expensive medical care. Medical stability was listed as a dispute in the settlement agreement. The settlement of that issue removed any dispute about it from litigation;[50] when parties enter into a settlement disputed issues are considered resolved, and the

---

[47]    (...continued)
actions he took in Rosales's case. *Cf. Lane v. Ballot*, 330 P.3d 338, 342 (Alaska 2014) (holding that because attorney had formally appeared in court for client "the attorney was authorized to speak and act for him").

[48]    The deposition was filed in April 2011 during Rosales's first attempt to set aside the settlement.

[49]    Dr. Ginsberg performed an independent medical evaluation of Rosales at the request of Rosales's attorney.

[50]    *See Sourdough Dev. Servs., Inc. v. Riley*, 85 P.3d 463, 466-67 (Alaska 2004) (discussing effects of settlement on parties' litigation positions).

Board does not need to make findings about these issues.[51]  The Board was aware medical stability was an issue in any event, having inquired about Rosales's foot condition in its letter seeking more information.[52]  Although we did not discuss Dr. Feldman's chart notes in *Rosales I*, we observed that "failure to submit complete medical records might not be reversible error in all cases."[53]  We held the missing records "were not so critical" as to require setting aside the agreement.[54]  We reaffirm that decision.

With respect to attorney's fees, the regulation does not require an affidavit about attorney's fees; it requires information about the "attorney's fee arrangement between the employee . . . and the attorney, including the total amount of fees to be paid."[55]  The settlement complied with this requirement:  It stated Rosales's attorney's fees would "be paid as a contingency fee of $66,000 from the maritime settlement."  The settlement did not authorize Rosales's attorney to withhold part of the workers'

---

[51]     *See Rivera v. Wal-Mart Stores, Inc.*, 247 P.3d 957, 962 (Alaska 2011) (citing *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999)) (holding that Board only needs to make findings about issues that are contested and material).

[52]     *Rosales I*, 316 P.3d 580, 583 (Alaska 2013).  "Medical stability" as defined in the Act does not foreclose future medical treatment; a worker can be medically stable even if needing ongoing medical care.  AS 23.30.395(28).

[53]     *Rosales I*, 316 P.3d at 586 (quoting *Smith v. CSK Auto, Inc.* (*Smith II*), 204 P.3d 1001, 1012 (Alaska 2009)).

[54]     *Id.* at 587.

[55]     8 AAC 45.160(c)(5).  In the December 2009 letter seeking more information, the Board asked for either more information about the fee arrangement *or* an affidavit "as required under AS 23.30.145 and 8 AAC 45.180."  The agreement specified that attorney's fees were paid from the maritime settlement, so the Act's provisions about attorney's fees did not apply.

compensation settlement, but the Board addressed that concern and Rosales states the attorney returned the money to him.

Rosales makes multiple arguments related to subsection (e), including arguments that the Board did not make adequate findings about his best interest because of Dr. Feldman's opinions. He maintains he was not medically stable and needed retraining, so subsection (e) created a presumption the settlement was not in his best interest.

Res judicata applies and bars relitigation of this issue. We discussed medical stability and the Board's best interest finding in *Rosales I*.[56] We observed that the regulation permits the Board to approve a settlement before medical stability "if an employee shows that waiver is in his best interests."[57] Rosales testified in February 2010 that the settlement was in his best interest, and he answered the Board's questions about medical care and retraining, indicating he understood it was "virtually impossible" to set aside a settlement after Board approval. Moreover, the settlement set out reasons justifying waiver of future medical and retraining benefits. We see no error in the Commission's conclusion that Rosales had a full and fair opportunity to litigate regulatory compliance in *Rosales I* and the underlying administrative decisions.

### 2. The maritime damages offset was not improper.

One of Rosales's primary contentions in this appeal is that *Rosales I* and the administrative decisions it reviewed failed to consider federal case law to the effect that an employer may not offset workers' compensation payments by the amount

---

[56] *Rosales I*, 316 P.3d at 586-87.

[57] *Id.* at 586 (citing 8 AAC 45.160(e)).

awarded for pain and suffering in a maritime case.[58]   Rosales regards this federal authority as relevant because the Board considered the net amount Rosales was to receive under the maritime settlement — about $108,000 — to estimate when Icicle might again be liable for workers' compensation benefits.   Rosales implies that had the Board examined federal authority, it would have assessed his best interest differently because a smaller sum would have been available as a credit.

The parties' workers' compensation settlement agreement set out a dispute about whether Rosales's case was within the Board's jurisdiction.   In the discussion of that dispute, the settlement agreement cited several cases and stated both that "the employer is entitled to a credit for amounts paid under maritime law for the same injury because Rosales is not entitled to a double recovery" and that "all amounts paid, including the maritime portion of the settlement, should be considered by the Board when evaluating" Rosales's best interest.

Rosales relies on two federal cases similar to those cited in the settlement agreement  to support his argument.[59]   But it is not apparent that the federal rule applies to Rosales's case because the maritime settlement did not designate a specific amount of damages for pain and suffering.   As one federal appellate decision stated, an employer can receive a credit for "those items of damages . . . that bear a reasonable relation to the

---

[58]   In the first appeal Rosales alluded to this issue as part of his more general argument that the Board-approved global settlement violated AS 23.30.012 but cited no cases.

[59]   Rosales also discussed a Washington workers' compensation case holding that damages specifically designated for pain and suffering cannot be credited against the amount of workers' compensation paid when an injured worker recovers damages from a third party who is also responsible for his injury. *See Tobin v. Dep't of Labor & Indus.*, 239 P.3d 544 (Wash. 2010).   This case and its progeny are inapplicable to Rosales's case both because they arise under Washington law and because they involve suits against third parties rather than against the employer.

items of loss compensated by workmen's compensation benefits"; the maritime damages that could not be credited included pain and suffering damages.[60] This holding can be implemented only if some part of the settlement or award is designated as pain and suffering damages.[61]

The maritime settlement here consisted of an undifferentiated total of $195,000, representing payment to Rosales for his maritime claims as well as attorney's fees and costs. The settlement released Icicle from "every claim for damages, punitive damages, maintenance, wages, cure, found, transportation, consortium, reimbursement, interest, attorneys' fees, or expense under the laws of the United States, or any state," including future claims, that "may in any way arise out of or be connected with the accident that occurred in 2007." Because no damages for pain and suffering were specifically designated as such in the settlement agreement, the Board could not exclude pain and suffering damages when considering Rosales's best interest.[62]

---

[60]     *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 680 (5th Cir. 1969).

[61]     *See Figueroa v. Campbell Indus.*, Nos. 93-55936, 93-55945, 1995 WL 15511, at \*4 (9th Cir. Jan. 13, 1995) (holding employer not entitled to credit for prior workers' compensation payment to extent jury award was for pain and suffering); *see also Bryan v. Icicle Seafoods, Inc.*, No. C06-0231RSM, 2007 WL 3125274, at \*2 (W.D. Wash. Oct. 23, 2007) (permitting offset only for "overlapping areas of [injured seaman's] damages" (citing *Miron v. All Alaskan Seafoods, Inc.*, 705 F. Supp. 518, 519 (W.D. Wash. 1988))).

[62]     There also is no evidence Rosales specifically bargained for pain and suffering damages during settlement negotiations. Pain and suffering damages were not included in the list of claims set out in the maritime settlement agreement, and the letter Rosales's attorney addressed to the mediator in the maritime case did not discuss pain and suffering as a separate type of damages. In the maritime settlement Rosales "acknowledge[d] having been fully apprised of his rights by his attorney." Rosales complains in his brief that the Commission "blam[ed]" him for his attorney's actions.

(continued...)

Moreover, neither Rosales nor his attorney asked the Board to apply this federal precedent in weighing Rosales's best interest. They instead signed a settlement agreement that the Board could consider "all amounts" in determining Rosales's best interest. If Rosales or his attorney wanted the Board to exclude part of the damages, they needed to bring the federal rule to the Board's attention when the Board initially evaluated and held hearings about the settlement, and to explain what part of the settlement was meant to compensate for pain and suffering. The parties made the Board aware that about $87,000 of the settlement was for costs and attorney's fees, and the Board did not include that amount in weighing Rosales's best interest.

### 3. The Board's fact findings were adequate.

Rosales contends the Board failed to make adequate fact findings and that the Board contradicted itself by first refusing to approve the settlement and later deciding it was in his best interest. His argument about inadequate findings is confusing; it is not clear whether he is asserting the Board should have made more detailed findings about his best interest or whether he is complaining that the Board did not make findings about specific issues like medical stability. For example, he contends the Board should have made findings about Dr. Feldman's medical records and deposition, which he submitted during the first attempt to set the settlement aside. But he also suggests the Board should have made more detailed findings about his best interest, which would have happened

---

**62** (...continued)
Because the attorney was acting on Rosales's behalf, others involved in the litigation could rely on the attorney's actions. *Cf. Lane v. Ballot*, 330 P.3d 338, 342 (Alaska 2014) (holding that because attorney had formally appeared in court for client "the attorney was authorized to speak and act for him"). If Rosales is dissatisfied with his Washington attorney, that issue cannot be resolved in this case.

at the time the settlement was approved. Res judicata bars both claims because they arise from the same underlying facts as *Rosales I*.[63]

As a general matter the Board is required to make findings only about issues that are both material and contested.[64] When parties enter into a settlement disputed issues are resolved by the parties' agreement;[65] the consequence is that the Board does not need to make findings about those issues. In Rosales's case the parties informed the Board in the written settlement that they disputed: (1) whether Rosales's status as a seaman made him ineligible for workers' compensation; (2) what benefits he might be entitled to if he were covered by the Act; and (3) whether his work-related injuries would either require future medical care or prevent him from working, i.e., whether he was medically stable and would need retraining. Because Rosales entered into a settlement to resolve those issues, the Board did not need to make findings about his medical stability, what benefits he was entitled to, or whether he was entitled to both maritime damages and workers' compensation benefits, as he appears to be arguing in his brief before us.

At the February 2010 hearings about whether to approve the settlement the sole material and contested question was whether the settlement was in Rosales's best interest. The Board did not have to evaluate and discuss in detail each piece of evidence in its file to support its best interest finding. Rosales was represented by counsel, who informed the Board that doctors' opinions about Rosales's future medical care "were

---

[63] *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 141 (Alaska 2004)).

[64] *Rivera v. Wal-Mart Stores, Inc.*, 247 P.3d 957, 962 (Alaska 2011) (citing *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999)).

[65] *See Sourdough Dev. Servs., Inc. v. Riley*, 85 P.3d 463, 467 (Alaska 2004) (refusing to consider arguments that were part of settlement agreement).

taken into account" when settling the case. At the first hearing about approving the settlement the Board asked Rosales if he understood that, if it did not approve the settlement, Icicle would not have to pay future medical care until Rosales had "used up $108,000," and Rosales stated he understood. Rosales hesitated to agree the settlement was in his best interest because he thought he might be entitled to additional future medical benefits. At Rosales's request the Board continued the hearing to give Rosales more time "to think about it." At the second hearing about approving the settlement Rosales testified that: (1) he had discussed the settlement with his attorney; (2) he thought it was in his best interest; and (3) he understood it was "virtually impossible" to set the agreement aside.[66] Additionally the settlement indicated Rosales "concede[d] . . . he [was] capable of full time regular work." The Board "considers the employee's testimony in reaching a decision about his best interest."[67] On this record we see no error in the Board's finding the settlement was in Rosales's best interest.

Rosales argues that the Board contradicted itself by first refusing to approve the settlement agreement and then later doing so. But rather than as a contradiction, we view the Board's actions as a progression in determining Rosales's best interest. The parties initially submitted the workers' compensation settlement to the Board in early December 2009. The Board reviewed the written settlement and refused to approve it because there was insufficient evidence that the agreement was in Rosales's best interest. The Board requested more information, including additional medical records and a copy

---

[66]     In this appeal Rosales asserts he told the Board "he believed that the [settlement] was not in his best interest because he was waiving future medical care." This assertion fails to acknowledge his testimony at the second Board hearing, when he explicitly asked the Board to approve the settlement.

[67]     *Smith II*, 204 P.3d 1001, 1012 (Alaska 2009) (citing *Perkins v. Trident Seafoods Corp.*, AWCB Dec. No. 06-0189 at 7 (July 13, 2006)).

of the maritime settlement. The Board offered to schedule a hearing when requested. The Board held a hearing, agreed to Rosales's request for more time to think about it, then held a second hearing about Rosales's best interest. After considering the maritime settlement and Rosales's testimony, the Board decided settlement was in Rosales's best interest.

In our view this course of conduct shows the Board was protecting Rosales's interest by first asking for more information and then allowing him more time to consider the settlement and discuss it with his attorney. As Rosales and his attorney supplied the Board more information, the Board was better able to discern whether the settlement was in his best interest.

The central problem Rosales cannot overcome in attacking the Board's best-interest finding is his own testimony that: (1) he had discussed the agreement with his attorney; (2) he understood he was waiving entitlement to workers' compensation benefits, including future medical benefits; (3) he understood it was "virtually impossible to set the[] settlement agreement[] aside" if his condition changed; (4) the money he received would cover medical expenses; and (5) he wanted the Board to approve the settlement. Given this testimony there was simply no reason for the Board to engage in a searching evaluation of the record to decide whether the settlement was in Rosales's best interest, particularly when Rosales was represented by counsel knowledgeable about maritime litigation and the settlement indicated Rosales "concede[d] . . . he [was] capable of full time regular work."

### 4. As a matter of law Rosales did not prove the elements needed to set aside the settlement for misrepresentation.

In this appeal Rosales again contends Icicle misrepresented that it had filed all medical records in its possession. Res judicata clearly bars this claim: The Board and Commission rejected his misrepresentation claim in the first attempt to set aside the

settlement, and we affirmed those decisions.[68]  He now includes an argument about Icicle's vocational expert report, arguing that Icicle misrepresented that "[a]ll reports concerning reemployment benefits in the possession of the employer are attached."  This too is barred by res judicata, even if Rosales abandoned the argument in the course of the first appeal.[69]

In *Rosales I* we held that his attempt to set aside the settlement on the basis of misrepresentation failed as a matter of law because Rosales "never explained how the statements about medical records induced him to enter into the settlement."[70]  The same is true of the argument related to Skilling's report.  For a party to avoid a contract because of misrepresentation, the misrepresentation must:  (1) be fraudulent or material; (2) have induced the party to enter the contract; and (3) be one on which the party is justified in relying.[71]

The difficulty Rosales faces is showing either that the misrepresentations induced him to agree to the settlement or that he was justified in relying on the misrepresentations he accuses Icicle of making.  Rosales and his attorney had the means

---

[68]  *Rosales I*, 316 P.3d 580, 587 (Alaska 2013).

[69]  A December 2010 prehearing conference summary shows Rosales sought "discovery of vocational evaluation by William Skilling dated July 21, 2009" during his first attempt to set aside the settlement.  An issue is precluded by res judicata both when it has been raised and when it could have been raised in a prior proceeding.  *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981)).

[70]  316 P.3d at 587.

[71]  *Seybert v. Cominco Alaska Expl.*, 182 P.3d 1079, 1094 (Alaska 2008) (citing *Bering Straits Native Corp. v. Birklid*, 739 P.2d 767, 768 (Alaska 1987)).

to verify whether Icicle had in fact filed all medical records,[72] and they had an independent obligation to file medical records in their possession.[73]  In *Rosales I* we affirmed the Commission's decision as a matter of law because "Rosales never explained how the statements about medical records induced him to enter into the settlement."[74]  In other words Rosales has never adequately explained how he justifiably relied on the representation that Icicle had submitted all medical records or all records related to reemployment to the Board.[75]  Rosales also does not explain how any misrepresentation about filing vocational records could have been material.[76]  He conceded in the settlement that he was capable of full time work, and he told the Board at the first hearing that he was taking classes as part of a retraining effort.

According to Rosales the relevant records and Dr. Feldman's deposition tended to support his litigation position that he was disabled by the work-related injury and would need more medical care.  If that is the case, then whether Icicle submitted all records to the Board would be important only if Rosales had wanted the Board to *reject* the settlement, which was contrary to his expressed wishes at the settlement hearing

---

[72]    *Cf. Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 600 (Alaska 2004) (noting person seeking to avoid contract was "unable to conduct an independent search" for missing items).

[73]    8 AAC 45.160(c)(1).

[74]    316 P.3d at 587.

[75]    *See Seybert*, 182 P.3d at 1095-96 (requiring consideration whether claimant manifested assent to contract in reliance on misrepresentations and whether reliance was justified).

[76]    "A material fact is one 'to which a reasonable man might be expected to attach importance in making his choice of action.'" *Cousineau v. Walker*, 613 P.2d 608, 613 (Alaska 1980) (quoting WILLIAM L. PROSSER, LAW OF TORTS § 108, at 719 (4th ed. 1971)).

when he told the Board he wanted it to approve the settlement because it was in his best interest.

### 5.    Alaska Civil Rule 60(b) did not apply.

Rosales argues that the previous decisions of the Board, the Commission, and this court should be set aside under Alaska Civil Rule 60(b) but does not explain why Rule 60 would apply to an administrative proceeding or to an appeal. Alaska Civil Rule 1 limits the applicability of the civil rules to the superior court and (in some situations) the district court. We called Rule 60(b) "a convenient model" in the context of a request to set aside a workers' compensation settlement, but we clarified in *Blanas v. Brower Co.* that Rule 60(b) did not govern an employee's petition to set aside a settlement based on fraud.[77] We thus reject Rosales's argument that Rule 60(b) requires the Board and Commission decisions to be set aside.

Rosales notes our observation in *Rosales I* that his fraud arguments were "akin to fraud on the tribunal"[78] and contends Icicle's additional failure to file Skilling's report in spite of its assertion that it had filed all documents related to reemployment benefits made the sum of misrepresentations "just too much." The number of misstatements is not in itself a determining factor in assessing claims of fraud on the court. As we stated in *Village of Chefornak v. Hooper Bay Construction Co.*, "[t]o constitute fraud on the court under Rule 60(b), conduct must be so egregious that it involves a corruption of the judicial process."[79] Rosales and his attorney were aware that

---

[77]    938 P.2d 1056, 1063 (Alaska 1997). We held in *Blanas* that the Board had the power to set aside a settlement based on fraud by the other party, meaning that an original action in the superior court under Rule 60(b) was unnecessary. *Id.* at 1061-62.

[78]    316 P.3d at 587 (citing *Blanas*, 938 P.2d at 1062-64).

[79]    758 P.2d 1266, 1271 (Alaska 1988) (citing *Stone v. Stone*, 647 P.2d 582,
(continued...)

Skilling had evaluated Rosales for Icicle, so they could have brought this omission to the Board's attention but did not. Additionally, as we have mentioned, Rosales conceded in the settlement that he was capable of full-time work, and he told the Board at the first hearing that he was taking classes as part of a retraining effort. Thus even if Rule 60(b) applied, the conduct Rosales complains about does not meet the standard for fraud on the court.

### 6. Rosales's equal protection and due process claims are barred.

Rosales raises both equal protection and due process claims. Res judicata bars consideration of these claims because they were either actually raised in the first attempt to set aside the settlement or could have been because the claims arose out of the same set of facts. Although Rosales argues that res judicata does not apply to claims that neither the Commission nor this court explicitly addressed, decisions usually focus on potentially prejudicial errors, and res judicata applies equally to harmless errors not explicitly addressed in prior appeals.

### a. Equal protection

Rosales argues that the Board acted improperly when, in the course of his first attempt to set aside the settlement, it denied his reconsideration petition as being untimely.[80] According to Rosales, he timely filed the petition because regulations allow an additional three days to be added to deadlines when service is made by mail and he

---

[79] (...continued)
586 n.7 (Alaska 1982); *Allen v. Bussell*, 558 P.2d 496, 500 (Alaska 1976)).

[80] AS 44.62.540(a) requires a petition for reconsideration of an agency decision to be filed "within 15 days after delivery or mailing of the decision"; 8 AAC 45.060(b) provides that "[i]f a right may be exercised or an act is to be done, three days must be added to the prescribed period when a document is served by mail."

filed it on the 18th day following the decision.[81]  Assuming the Board incorrectly applied its regulations to the facts of this case, any error would be harmless.[82]  Both the Commission and this court reviewed the merits of Rosales's petition to set aside the settlement and affirmed the decision.[83]  Even if the Board had accepted the petition for reconsideration, the Board had discretion to deny it.[84]  Our affirmance of the underlying decision made the error harmless because the Board's failure to accept a reconsideration petition and rule on it did not affect the ultimate outcome of the case.[85]

---

[81]      Rosales raised this issue in the first appeal, but we did not discuss it.  As we understand Rosales's argument about reconsideration, the Board's refusal to accept his reconsideration petition prejudiced him because he submitted with the petition evidence that Icicle in fact had the medical reports in its possession before it filed the settlement agreement with the Board.  He intended to show that the Board was incorrect when it found, in its 2011 decision refusing to set the settlement aside, that no evidence showed Rosales had served the reports on Icicle before Icicle submitted the settlement to the Board.  But even if this finding was incorrect, it was irrelevant.  The Commission and this court decided *as a matter of law* that the misrepresentation claim had no merit.  Rosales did not show either how he could have justifiably relied on the alleged misrepresentation, *see Rosales v. Icicle Seafoods, Inc.*, AWCAC Dec. No. 163 at 9-10 (July 11, 2012), or how they induced him to settle his case — that is he did not show why he would agree to settle his workers' compensation claim because Icicle said it had filed all medical records in its possession.  *Rosales I*, 316 P.3d at 587.

[82]      The record shows that Rosales filed a petition for reconsideration dated June 3, 2011, which the Board received on June 6.  The Board decision is dated May 19. Rosales filed a separate document dated June 6, which the Board received on June 9, setting out the reasons for his reconsideration petition.

[83]      *Rosales I*, 316 P.3d at 589; *Rosales v. Icicle Seafoods, Inc.*, AWCAC Dec. No. 163 (July 11, 2012).

[84]      AS 44.62.540(a) provides that an agency may reconsider a decision.

[85]      *See Coppe v. Bleicher*, 318 P.3d 369, 376-77, 379-80 (Alaska 2014) (holding that errors by Board and Commission were harmless because they did not affect
(continued...)

In another equal protection argument Rosales claims the same Board panel that heard his case treated the litigant in *Wade v. Chugach Support Services*,[86] "a very similar case" in his view, differently. In *Wade* the Board declined to approve a settlement and ordered a medical examination of the claimant, but consideration of *Wade*'s facts shows how different the case was from Rosales's.[87] Wade was not represented by counsel;[88] Rosales was, even if his attorney was not licensed to practice in Alaska. Wade would have received $2,500 for her claim;[89] while Rosales received about $113,000 net in addition to payment of an outstanding medical lien. Wade had not seen a doctor for almost a year when the Board considered the settlement;[90] Rosales testified he was seeing a doctor monthly. These factual differences are sufficient to justify different discretionary treatment by the Board.

Rosales also compares his case to *Smith v. CSK Auto, Inc.* (*Smith II*), in which we reversed an administrative decision declining to set aside a settlement.[91] But unlike Smith, who was not even present at the hearing about his settlement,[92] Rosales had two separate hearings about approving the settlement. During the course of the first

---

[85] (...continued)
injured worker's rights).

[86] AWCB Dec. No. 12-0033 (Feb. 23, 2012).

[87] *Id.* at 9-10.

[88] *Id.* at 1.

[89] *Id.* at 5.

[90] *Id.* at 4-5, 9.

[91] 204 P.3d 1001, 1013 (Alaska 2009).

[92] *Id.* at 1005.

hearing Rosales told the Board he thought he might be entitled to additional medical benefits, and after some discussion, the Board granted his request for more time "to think about" the settlement. At the first hearing the Board inquired about retraining, the medical care Rosales was then receiving, and his opinion about his best interest in entering into the settlement. Rosales told the Board he was attending college and planned to use part of the settlement for retraining. Rosales outlined his ongoing medical care to the Board, indicating he was seeing a medical doctor monthly and taking medication. Rosales's attorney assured the Board that doctors' opinions about Rosales's future medical care "were taken into account" when settling the case. As we noted in *Smith II*, the Board may approve a settlement before medical stability if a preponderance of the evidence persuades it the settlement is in the employee's best interest; "the Board considers the employee's testimony in reaching a decision about his best interest."[93]

Rosales's other equal protection claims are meritless; most are unsupported allegations of bias related to his not being an Alaska resident, not being represented by an Alaska attorney, having an accent, and not being Caucasian. He provides no citation to the record to support these allegations. We also see no evidence of selective enforcement that would violate equal protection. "Selective enforcement of a statute violates the equal protection clause only if it is part of a deliberate and intentional plan to discriminate based on an arbitrary or unjustifiable classification."[94] Unsubstantiated allegations of bias do not show a violation of equal protection.

---

[93] *Id.* at 1012 (citing *Perkins v. Trident Seafoods Corp.*, AWCB Dec. No. 06-0189 at 7 (July 13, 2006)).

[94] *Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1040 (Alaska 1989).

### b. Due process

Rosales also contends his procedural due process rights were violated. Res judicata bars litigation of the claim, but it has no merit in any event. Procedural due process requires notice and an opportunity to be heard "appropriate to the nature of the case."[95] As set out above Rosales appeared at the first hearing on the settlement along with his attorney. The Board questioned him and agreed to continue the hearing about his best interest when he asked for more time. At the second hearing he testified about why he thought the settlement was in his best interest. This process was more than sufficient.

The Board also held a hearing on Rosales's petition to set the settlement aside, providing him with notice and an opportunity to present evidence and arguments about his claims. It issued a written decision that Rosales appealed both to the Commission[96] and this court.[97] The Board also held a hearing on Rosales's second petition and again issued a written decision, which Rosales again appealed to the Commission and this court. While Rosales complains that the Board and the Commission did not adequately address all of the arguments he made, their reasoning was adequate to show why they decided the case as they did. The fact that they did not rule in Rosales's favor is not evidence of bias or a lack of due process. The Board warned Rosales at the hearings about approving the settlement that it was virtually impossible to set aside a workers' compensation settlement, but he nonetheless testified that he wanted the Board to approve the settlement because it was in his best interest.

---

[95]     *Copeland v. Ballard*, 210 P.3d 1197, 1201 (Alaska 2009) (quoting *Carvalho v. Carvalho*, 838 P.2d 259, 262 (Alaska 1992)).

[96]     *Rosales v. Icicle Seafoods, Inc.*, AWCAC Dec. No. 163 (July 11, 2012).

[97]     *Rosales I*, 316 P.3d 580 (Alaska 2013).

Rosales also asserts his right to due process was violated because of hearing officer misconduct, relying in part on the outcome of the agency investigation of a complaint he made — during the course of the current proceedings — against the hearing officer who had presided at the hearings to approve the settlement and the first hearing about setting it aside. Rosales's complaints were investigated by the Department of Law as required by statute and regulations.[98] The adjudicator assigned to the matter recommended no discipline for the former hearing officer in spite of his determination that she had committed a minor violation, and the Attorney General accepted this recommendation. While it may have been better practice for the hearing officer to disclose her prior representation of Icicle's insurer at the outset of the case, the investigation results do not require a new hearing on Rosales's claims.[99] As we said in *Rosales I*, the record does not show actual hearing officer bias.[100] Because the case began as a settlement, with the parties in apparent agreement about its outcome and Rosales testifying in favor of the settlement, claims related to possible hearing officer bias from a prior attorney-client relationship are attenuated. When Rosales's contested petition to set aside the settlement was heard in April 2011, more than two years had passed since the former hearing officer had last represented the insurer, so the hearing

---

[98] AS 44.64.050; 2 AAC 64.010-.090 (2012) (Code of Hearing Officer Conduct); 9 AAC 64.010-.900 (2007) (setting out procedures for complaints against hearing officers and administrative law judges).

[99] The records from the investigation, which Rosales submitted with his brief, suggest the Board has some type of rule barring hearing officers for two years from hearing cases involving former clients. We have not found any statute or regulation with this rule, so it is hard to evaluate whether or how it might have applied to Rosales's case.

[100] We have set out more than once the efforts the Board took to ensure that it had adequate information about Rosales's case.

officer apparently would not have been barred by agency rules or policies from hearing the contested case.

B. **The Board And The Commission Properly Addressed Attorney's Fees.**

Rosales contends that the Commission did not comply with the law when it failed to address the Board's refusal to award Icicle attorney's fees against him. Rosales evidently bases his argument on the Board's refusal to award fees to Icicle because Rosales's pleadings "[did] not constitute an appeal." But Icicle did not appeal to the Commission the Board's denial of its request for fees.

The Commission and Board are both administrative agencies, and their powers are limited to those powers the legislature delegates to them.[101] The Board acknowledged it could not award attorney's fees to Icicle but made a passing reference to awards of fees for an appeal. Because Rosales appealed to the Commission and the Commission upheld the Board's decision, Rosales evidently thought the Commission would award fees against him. But the Act allows the Commission to award fees against an injured worker only in limited circumstances, and a Commission regulation requires a prevailing party to move for attorney's fees within ten days of the Commission's decision.[102] Icicle did not move for fees after the decision, so the Commission did not award it fees. And the statute the Board looked at, AS 23.30.145(c), authorizes a court, not the Commission, to award attorney's fees in an appeal. In short, neither the Board nor the Commission erred in its decision about attorney's fees for Icicle.

## V. CONCLUSION

We AFFIRM the Commission's decision affirming the Board's decision.

---

[101] *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 40 (Alaska 2007); *Gunter v. Kathy-O-Estates*, 87 P.3d 65, 69 (Alaska 2004).

[102] AS 23.30.008(d); 8 AAC 57.260(a) (2011).